(563 P.2d 497)
No. 48,368

PATRICK McHUGH, *Appellant*, v. THE CITY OF WICHITA, *Appellee*.
Petition for review denied June 15, 1977.

Opinion filed April 8, 1977.

*Martha R. Hodges*, of Wichita, for the appellant.

*H. E. Jones* of Hershberger, Patterson, Jones & Roth, of Wichita, and *John Dekker*, of Wichita, for the appellee.

Before FOTH, P.J., ABBOTT and PARKS, JJ.

PARKS, J.: This appeal involves an alleged nuisance maintained by the city of Wichita, Kansas. A jury verdict was rendered in favor of the city of Wichita. The plaintiff appeals.

In the spring of 1966, the plaintiff purchased a home in the Glenn Village area of the city of Wichita, Kansas. During the time Patrick McHugh owned the property, he had problems with backup of fluids into the home through the basement stool and the basement bathtub. On April 23, 1971, Mr. McHugh and others filed a lawsuit against the city based upon the theory of nuisance. The jury returned a verdict in favor of Mr. McHugh in the amount of $539.50. The defendant, city of Wichita, Kansas, did not appeal that decision.

On January 10, 1974, plaintiff filed a second lawsuit against the city of Wichita on the legal theory of nuisance based on the overflow of his bathtub and stool in January and March of 1973. On the first two occasions in January, 1973, plaintiff's residence experienced the overflow problem even though there was no rain. Plaintiff testified this was unusual in that previous sewer backups had always been accompanied by heavy rainstorms. On March 10, 1973, there was rainfall, and the stool and bathtub again filled with liquid.

On January 25, 1973, Irwin L. Penner, an employee of the city of Wichita, Kansas, went to plaintiff's residence. He discussed the problem with plaintiff, examined the manhole in the yard to the rear of plaintiff's residence and examined the basement. Mr. Penner found that the manhole had to be elevated because it was 16 inches below fill level. The city of Wichita later raised this manhole to ground level. In examining the interior of the manhole and the city's sewer, Mr. Penner found that the water was flowing normally into the city's sewer line and that there was no grease ring or other evidence to indicate any backup problems in the city's sewer line. Mr. Penner then went into appellant's basement and found the carpet wet but did not smell any odor of sewage. Mr. Penner stated that in his opinion the overtaxing problems of the area lift station belonging to the city of Wichita, and located near Mr. McHugh's home, had no relation to plaintiff's problem.

Plaintiff testified that he had put a shut-off valve in his sewer at the recommendation of the city of Wichita, but that the water system could not be used when the shut-off valve was closed. Plaintiff stated that he did not know what material his sewer line was made of, nor had he ever replaced it or asked anyone to inspect it.

Mr. George Wilton, a civil engineer employed by the city of Wichita as superintendent of Public Works and Maintenance, testified that he had contacts with residents of the Glenn Village area on numerous occasions from 1962 through 1969. He had occasion to confer with the plaintiff about sewage backup problems and recommended to plaintiff the installation of the screw type shut-off valve as he felt it was the best one available at that time. He further testified that the city had smoke bombed the Glenn Village sewer mains to ascertain the reasons for the infil-

tration of water into the sewer mains; the city hired a consulting firm; television grouting units were purchased at a cost of $20,000 to $30,000 each to repair leaking joints; and, in 1969, a sewage interception line was completed in the Glenn Village area and this relieved much of the city's backup problems. He claims that the sewer main has never been full since.

In April of 1974, the city televised the city-owned sewer main behind Mr. McHugh's residence. They found a little bit of tree root in the connection from plaintiff's house and a steady stream of water was flowing out of the plaintiff's line. The water table at the plaintiff's residence is above the plaintiff's building sewer line and in Mr. Wilton's opinion, the steady stream of water indicated a break in the plaintiff's own building line.

All the evidence and witnesses in this case were presented by the plaintiff, except for the testimony of Mr. Bill Hartong, a realtor, who appraised the property and saw no permanent damage to the residence had been caused by the sewage backup problems.

The motion of the defendant for dismissal of the punitive damages count against the city of Wichita, Kansas, was sustained at the close of plaintiff's case. The plaintiff's motion that the prior judgment against the city of Wichita, Kansas, is res judicata as to the question of creation of a nuisance by the defendant, was overruled by the court at the close of all the evidence. Following a deliberation of approximately one hour and twenty-five minutes, the jury returned a verdict in favor of the city of Wichita, Kansas.

Plaintiff contends that the trial court erred in ruling that the judgment in the 1971 action was not res judicata as to the creation of a nuisance by the defendant in the present action.

Plaintiff cites in support of his contention a Washington state case where the landowners complained of a continuing interference with the use and enjoyment of their property by the acts of a cement company in emitting cement dust from their plant. In discussing the doctrines of res judicata and collateral estoppel as outlined in *Riblet v. Ideal Cement Co.*, 54 Wash. 2d 779, 345 P. 2d 173 (1959), the plaintiff has set forth in his brief the following statements:

"The rule of estoppel by judgment, sometimes called collateral estoppel, controls here. Judgments in prior actions between the Riblets and appellant's privy determined the rights and liabilities of the parties and the law applicable thereto.

In the absence of a major factual change, the prior judgment binds these parties. *Bodeneck v. Cater's Motor Freight System, Inc.*, 198 Wash. 21, 86 P. 2d 766; *Hamm v. City of Seattle*, 140 Wash. 427, 249 P. 778.

"In the case of a continuing nuisance, the *Bodeneck* case, *supra*, controls. We there said:

" 'It is well settled that, under the doctrines of *res judicata* and estoppel by judgment, neither the same facts nor identical facts may be re-litigated. In cases involving continued nuisances, it is the general rule that a plaintiff, having once recovered, may recover for subsequent damage, if his complaint is supported by evidence, and may rely upon the prior judgment in his favor as determining the law of the case. . . .' " (54 Wash. 2d at 782.)

We think the following are key words in the above statements: "In the absence of a major factual change," and "neither the same facts nor identical facts may be re-litigated."

In *Klassen v. Creamery Co.*, 160 Kan. 697, 165 P. 2d 601, Syl. 1, it is stated:

"In an action for damages against a creamery company for injury to livestock caused by pollution of the underground water supply of a farmer, defendant argued that the cause of action pleaded was res judicata on account of a judgment in a former action between the same plaintiff and the city where the creamery plant was located—*held*, the cause of action stated was for injury to different livestock and during a later period of time —hence one was not res judicata to the other."

The evidence in the present case indicates that the dates of the alleged nuisance in the instant case and the prior judgment are separated by approximately four years; the damages are for permanent injury and injury to specific personal property, and not personal expenses as was alleged in the first case against the city of Wichita; there were several changes made by the city of Wichita since the 1971 action; there was undisputed evidence that there was a break in plaintiff's own building sewer line and that at least two backflows were not related to any rainstorm, overflow of the municipal sewer mains, or storm drains.

The trial court was correct in finding that there was a substantial and material change in the facts and circumstances surrounding this case and the prior judgment, and that the doctrines of res judicata and collateral estoppel were not applicable.

Plaintiff argues that the trial court erred in dismissing plaintiff's claim for punitive damages against the defendant, the city of Wichita.

The majority rule in the United States is that absent legislative pronouncement to the contrary, municipalities are not liable for

punitive damages. (Punitive Damages from Municipality, 19 A.L.R. 2d 903.) The underlying justification and purpose of punitive damages, which is punishment of a wrongdoer, is inapplicable to municipal corporations. (*Chappell v. City of Springfield,* 423 S.W. 2d 810 [Mo. 1968].) Previous decisions, although not directly on point, indicate that Kansas would follow the view that punitive damages may not be awarded against a municipality. (*City of Parsons v. Lindsay,* 26 Kan. 426 [1881]; *Adams v. City of Salina,* 58 Kan. 246, 48 Pac. 918.)

In the absence of any statute authorizing the award of punitive damages against a municipality, the trial court correctly sustained the defendant's motion to strike or dismiss the claim for punitive damages.

In this connection, we hold that it was proper to submit to the jury the factual issue as to the cause of the sewer backflow into plaintiff's basement. From the record in this case, it is clear that plaintiff did not sustain the burden of showing that the city was at fault.

Plaintiff complains that he was precluded from presenting newly discovered evidence at his hearing on a motion for new trial. At the outset, we would point out that the affidavit, which was signed by Mr. McHugh, was not in compliance with K.S.A. 60-259 (*g*). This statute requires the affidavit to be signed by the witness himself. (*Sims v. Schrepel,* 208 Kan. 527, 531, 492 P. 2d 1312; *Laughlin Motors v. Universal C.I.T. Credit Corp.,* 173 Kan. 600, 608, 251 P. 2d 857.)

Furthermore, there was no showing that the proffered evidence was relevant to the issue of whether a nuisance existed or that the evidence could not have been discovered with reasonable diligence in time to be used at the trial as required by K.S.A. 60-259 (*a*), *Fifth.* In *State v. Leigh,* 166 Kan. 104, 199 P. 2d 504, the court said:

"The granting or denial of a motion for new trial on the ground of newly discovered evidence rests largely in the sound discretion of the trial court. It must first be shown to that court's satisfaction that such evidence could not with reasonable diligence have been produced at the trial. . . ." (p. 112.)

Under the facts and circumstances of this case, we find no abuse of discretion on the part of the trial judge. Accordingly, the ruling to deny a new trial will not be disturbed.

Other points raised by plaintiff concern other motions which

were overruled by the trial court. We have carefully examined the contentions presented and find them to be without merit.

The judgment is affirmed.