(623 P.2d 527)
No. 51,056

Laura A. Martin, *Appellee,* v. James R. Martin, *Appellant.*
Petition for review denied April 13, 1981.

Opinion filed February 6, 1981.

*Don W. Noah,* of Noah & Harrison, P.A., of Beloit, for appellant.

*Frank C. Norton,* of Norton, Wasserman & Jones, of Salina, for appellee.

Before REES, P.J., ABBOTT and PARKS, JJ.

ABBOTT, J.: Defendant, James R. Martin, appeals from the trial court's ruling in a divorce action, contending the trial judge abused his discretion in making the division of property, in awarding alimony, in failing to set aside the decree and in refusing to hear a post-trial motion to terminate alimony. The plaintiff, Laura A. Martin, cross-appeals, arguing that the award of alimony to her should have been in a greater amount and that the trial judge abused his discretion in awarding her insufficient alimony. She also alleges the defendant, by his marriage to another person, acquiesced in the judgment.

1. *Acquiescence.* Plaintiff has raised a jurisdictional issue as to whether defendant is barred from challenging the orders for division of property and alimony because of his remarriage on October 26, 1978. The general rule, subject to certain exceptions, is that a litigant who has acquiesced in the judgment of the trial court by assuming the burden of such judgment or by accepting the benefits thereof cannot thereafter appeal from such judgment. *Brown v. Combined Ins. Co. of America,* 226 Kan. 223, Syl. ¶ 6, 597 P.2d 1080 (1979). In support of her argument, plaintiff cites *Patterson v. Patterson,* 164 Kan. 501, 190 P.2d 887 (1948), in which the Supreme Court reversed the trial court's order setting aside a voidable divorce decree for the reason that the ex-wife (who had initiated the action to set aside the original decree) had acquiesced in the validity of the divorce decree by her actions on at least three important occasions, which included remarrying. 164 Kan. at 504. The most recent expression of the rule is found in *Justus v. Justus,* 208 Kan. 879, 495 P.2d 98 (1972), wherein the Supreme Court held that the former husband was estopped from challenging the validity of the original divorce decree since he had remarried on the strength of it, stating at page 880:

"When a former spouse takes advantage of a decree of divorce by remarrying he cannot question the validity of the decree in a collateral proceeding concerning any rights which arose from the marital relation and which were determined by the decree."

In the case before us, the defendant is not challenging the validity of the entire divorce decree, and neither party is at-

tempting to have the marital dissolution set aside. The controversy is solely over the division of property and alimony. The appellants in both *Justus* and *Patterson* were attempting to have the entire divorce decree set aside. In *Gordon v. Gordon,* 218 Kan. 686, 691, 545 P.2d 328 (1976), our Supreme Court stated that "the general rule pertaining to acquiescence in judgments should not be strictly applied in divorce cases because of the peculiar situations of the parties and the equitable considerations involved." As we view *Gordon,* it holds that when the complaining party cannot show prejudice, the determinative factors of acquiescence in a domestic relations case revolve around the consistency with which the litigant is attacking the judgment or the severability of the provision of the judgment under which the benefits have been accepted or burdens assumed.

Here, neither party has challenged the marriage dissolution, which would be the only portion of the decree inconsistent with remarriage. The marriage dissolution is not affected by this appeal and it is a final judgment. Other states are in accord with this view, having held that the marital and financial benefits of a divorce decree are divisible and that remarriage has no effect on the financial aspects of the decree as far as acquiescence is concerned. *Alderson v. Alderson,* 258 Ind. 328, 281 N.E.2d 82 (1972); *Miller v. Miller,* 202 N.W.2d 105 (Iowa 1972). See Annot., 29 A.L.R.3d 1167; Annot., 55 A.L.R.3d 1299.

We are not confronted with a question as to whether the marriage is void by reason of K.S.A. 1980 Supp. 60-1610(*h*) and express no opinion as to whether the legislature intended to prohibit the marriage of parties who have appealed a domestic relations case pending the receipt of the mandate where the marriage dissolution is not challenged. It appears to us that the legislature intended the prohibition to apply in those cases where the dissolution of the marriage is in issue so as to prevent the remarried party from being guilty of bigamy should the divorce decree be set aside. We conclude that this defendant did not acquiesce in the judgment of the district court so as to preclude him from appellate review of the property division and alimony judgment by reason of his marriage.

2. *Division of Property.* The parties accumulated a considerable amount of property during their marriage. Plaintiff had worked as a schoolteacher during most of the marriage. Defendant practiced

law and is chairman of the board of directors of the First State Bank of Osborne. The trial court heard expert testimony and the opinions of the parties about the value of the various assets owned by them, and a value was placed on each of the assets. Based on the trial court's values placed on the assets, and adjusting the figures to include liabilities the defendant was ordered to pay, the court awarded to each party property amounting to approximately one-half the value of the accumulated property. Defendant's complaints concerning the division of property fall into three distinct categories.

A. Requested Offset. In its decree dividing the properties, the trial court overlooked assigning a debt of $12,500. Defendant requested that the trial court give him credit for that amount against $137,000 he was ordered to pay to plaintiff as part of the property settlement agreement. The trial court ordered defendant to pay the indebtedness. The trial judge stated that although his memorandum decision did not assign the indebtedness to the defendant, the court was aware of the indebtedness and had intended to assign it to defendant. We find no abuse of discretion in the trial court's assigning the indebtedness to defendant for payment.

B. Contingent Liabilities. Defendant owned a one-third interest in WCM Company. The three owners of WCM Company personally guaranteed notes totaling $472,500 (the record indicates plaintiff also personally guaranteed the notes). The trial court found that defendant testified at trial that the possibility of liability was "a rather speculative liability that may or may not occur."

As we view the record, the trial court heard evidence at the trial concerning the contingent liability, and based on that evidence we cannot say the trial judge abused his discretion in assigning the contingent indebtedness to the defendant. The contingent liability was listed by defendant in his statement of assets; it is shown in the pretrial order and was testified to by the defendant. As discussed more fully below, the evidence offered on the motion for a new trial concerning the guaranteed notes is not newly discovered evidence under K.S.A. 60-259(a) *Fifth.* *McHugh v. City of Wichita,* 1 Kan. App. 2d 180, 563 P.2d 497, *rev. denied* 225 Kan. 845 (1977).

C. Newly Discovered Evidence. Defendant contends that the

trial court erred in not allowing him to show that a bank audit required the bank to reevaluate the notes held by the bank and to consider some of them as losses. Defendant alleged in his motion for new trial that the expert witnesses who testified to the value of the bank stock had no way of knowing the true state of the loan file, hence the stock was valued higher than its actual worth. The motion requested relief based on newly discovered evidence pursuant to K.S.A. 60-260(*b*). This motion was filed July 6, 1979. Defendant's appeal from the divorce judgment was docketed in the Court of Appeals on April 23, 1979.

This Court recently had occasion to discuss the rules relating to such situations in *Darnall v. Lowe,* 5 Kan. App. 2d 240, 242, 615 P.2d 768 (1980):

"We first consider the question whether a trial court has jurisdiction to correct or modify a judgment under K.S.A. 60-260 after an appeal has been docketed at the appellate level and without notice to the parties. . . .

"First, *Wichita City Teachers Credit Union v. Rider,* 203 Kan. 552, 556, 456 P.2d 42 (1969), instructs that a trial court may reexamine its rulings within the time period allotted by K.S.A. 60-260, *provided* it does so prior to the time the appeal is docketed at the appellate level. Here, the appeal had been docketed in the Court of Appeals prior to the judgment's having been modified as a result of a mistake of law, and the trial judge had lost jurisdiction. See also *Neagle v. Brooks,* 203 Kan. 323, 328, 454 P.2d 544 (1969); *In re Estate of Corson,* 226 Kan. 673, 602 P.2d 1320 (1979)."

Under this rule, it would appear the trial judge correctly refused to entertain the K.S.A. 60-260(*b*) motion pending appeal. While this Court is bound by the Kansas Supreme Court's holding in *Wichita City Teachers Credit Union v. Rider,* 203 Kan. 552, 456 P.2d 42 (1969), it is interesting to note there is a procedure available in the trial court that is preferable to merely rejecting consideration of the motion. In 11 Wright & Miller, Federal Practice and Procedure: Civil § 2873 (1973), it is stated:

"The earlier cases on Rule 60(b) took the view that the district court has no power to consider a motion under that rule after a notice of appeal has been filed. This always has seemed anomalous since the time for making the motion continues to run while the case is pending on appeal. Those cases required a party seeking relief from a judgment during the pendency of an appeal first to present his grounds for relief to the appellate court. If it thought that the motion should be heard it would remand the case to the district court for that purpose. An alternative to actual remand was for the appellate court to give permission to the district court to rule on the motion.

"Other cases have developed a different and more satisfactory procedure. They hold that during the pendency of an appeal the district court may consider a Rule

60(b) motion and if it indicates that it is inclined to grant it, application then can be made to the appellate court for a remand. This procedure is sound in theory and preferable in practice. The logical consequence is that the district court may deny the motion although it cannot, until there has been a remand, grant it, and this seems to be the interpretation followed by many courts. This allows a new appeal from the denial of the motion and often the appellate court can consider that appeal together with the appeal from the original judgment. Other courts, however, take the conceptual view that the district court can take no formal action on the motion while the case is pending in the court of appeals. This requires them to hold that they cannot consider on appeal from the main judgment the fact that the trial court has indicated it would deny the motion, thus leaving the party free to press the motion again if he loses his first appeal, and then take a second appeal. The only alternative is for the appellate court to take into account on the main appeal the fact that the trial court has indicated it will deny the motion, even though technically it has made no order and nothing is before the appellate court in this connection. This is more sensible than allowing the motion to drift in limbo, but better still is to recognize frankly that the district court can deny the motion even though it cannot grant it."

The Tenth Circuit has already adopted the view that the trial court can deny the motion. See *Aune v. Reynders,* 344 F.2d 835 (10th Cir. 1965).

Even if the trial court here had considered the K.S.A. 60-260(*b*) motion, it appears the motion would have been denied. K.S.A. 60-260(*b*) states:

"On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for the following reasons . . . (2) newly discovered evidence which by due diligence could not have been discovered in time for a new trial under K.S.A. 60-259(*b*)."

The evidence relating to the $12,500 loan from Topeka State Bank as well as the evidence relating to defendant's contingent liability of $472,500 was considered at trial and on defendant's motion for new trial, and it does not amount to newly discovered evidence. In *McHugh v. City of Wichita,* 1 Kan. App. 2d 180, 184, 563 P.2d 497, *rev. denied* 225 Kan. 845 (1977), this Court, following *State v. Leigh,* 166 Kan. 104, 199 P.2d 504 (1948), stated:

" 'The granting or denial of a motion for new trial on the grounds of newly discovered evidence rests largely in the sound discretion of the trial court. It must first be shown to that court's satisfaction that such evidence could not with reasonable diligence have been produced at the trial . . . .' (p. 112.)"

See also *Plains Transport of Kansas, Inc. v. Baldwin,* 217 Kan. 2, 535 P.2d 865 (1975); *Sims v. Schrepel,* 208 Kan. 527, 492 P.2d 1312 (1972); *State v. White,* 1 Kan. App. 2d 452, 571 P.2d 6 (1977).

Defendant testified he is the presiding officer of the Osborne bank as well as the top management officer. He goes to the bank every morning and every afternoon and spends approximately fifty percent of his working day at the bank. Obviously he is, or should be, familiar with the loans made by the bank. All of the information concerning the loans was available to the defendant at the time the case was tried. The conclusions of the bank auditor may not have been available, but the actual facts upon which the conclusions were based were available. The bank auditor's findings concerning loans are based on uniform policies published and distributed to banks by the comptroller of the currency. The policies are well known in the banking industry and should not be a surprise to defendant or the expert witnesses in this case. The fact that farm economic conditions may have deteriorated after the divorce decree was granted and some loans became delinquent (or more delinquent) would not affect the property division, which was based on the evidence presented in large part by the defendant.

3. *Alimony.* While alimony and property division are separate and distinct concepts, neither one can be intelligently fixed without giving appropriate consideration to the other. *Almquist v. Almquist,* 214 Kan. 788, 793, 522 P.2d 383 (1974). The purpose of alimony is to provide for the future support of the divorced spouse, and the amount thereof is to be based upon the needs of one party and the ability of the other to pay. *Carlton v. Carlton,* 217 Kan. 681, 538 P.2d 727 (1975). The trial court has wide discretion when it comes to matters relating to alimony, and its judgment in awarding alimony will not be disturbed absent a clear abuse of discretion. *Parish v. Parish,* 220 Kan. 131, 134, 551 P.2d 792 (1976).

Here the court awarded plaintiff $500 per month, terminable only on death or remarriage. Although not material to this decision, we are advised that plaintiff did marry another person on May 24, 1980. Defendant complains that the court not only awarded too much alimony but also erred in making it terminable only on death or remarriage. Plaintiff cross-appeals, arguing that the amount awarded is inadequate.

Using plaintiff's own figures, her monthly expenses amount to approximately $1,900. She testified that she expects to earn approximately $900 per month from her job. That, added to the $700

support payments from defendant, reduces her alleged $1,900 deficit per month to only $300. This figure is not unreasonable given the fact plaintiff received a generous property division, including some income-producing property. It is not mandatory that a wife even be awarded alimony (*Parish v. Parish,* 220 Kan. at 134), and plaintiff here has demonstrated no abuse of discretion by the trial court. Neither can we say the trial judge abused his discretion in the amount awarded or in making it terminable only on death or remarriage. The parties had been married for 21 years. Considerable disparity existed between their earning abilities; and plaintiff had made a significant contribution to defendant's education which led to his increased earning capacity. By statute, upon a showing of a change of circumstances, the court has authority to terminate or reduce alimony. K.S.A. 1980 Supp. 60-1610(*d*); *Carlton v. Carlton,* 217 Kan. at 681.

4. *Modification of Alimony.* Defendant filed a motion to terminate alimony based on changed circumstances. We deem the motion to comply with K.S.A. 1980 Supp. 60-1610(*d*). A motion to terminate alimony under 60-1610 is distinct from a motion to set aside a judgment under K.S.A. 60-260 and the two are not interchangeable. *Brady v. Brady,* 225 Kan. 485, 490, 592 P.2d 865 (1979). In our opinion, K.S.A. 1980 Supp. 60-1610 gives to the trial court authority to modify alimony *at any time,* and the trial court erred in determining that it lacked jurisdiction to hear the motion because its original decision had been appealed. When a change of circumstances has occurred, the trial court has specific statutory authority to provide for the care, custody and control of minor children and to modify alimony payments, even though a prior order involving the same subject is on appeal and has been docketed. When an appeal is docketed, the trial court does lose jurisdiction over that judgment; but when statutory authority exists for continuing jurisdiction to modify an existing order on grounds independent of the appealed judgment, the trial court does have jurisdiction to do so even though the ultimate result may be to render the appeal moot.

The case is remanded to the trial court with directions that defendant's motion to terminate alimony due to changed circumstances be considered.

Affirmed in part and reversed in part with directions.