NOT DESIGNATED FOR PUBLICATION

No. 114,584

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS, *ex rel*. SECRETARY DEPARTMENT OF SOCIAL AND REHABILITATION
SERVICES (DCF),
*Appellee*,

and

MIA L. MCROY,
*Appellant*,

v.

ADRIAN K. ELMORE, SR.,
*Appellee*.


MEMORANDUM OPINION

Appeal from Johnson District Court; ROBERT J. WONNELL, judge. Opinion filed April 21, 2017.
Affirmed.

*Mia L. McRoy*, appellant pro se.

*Courtney J. Whiteley*, of Whiteley Law Office, of Olathe, for appellee.

Before HILL, P.J., MALONE and GARDNER, JJ.

*Per Curiam*: In this child support action, Mia L. McRoy argues that because the judge did not follow Kansas Child Support Guidelines and then refused to grant her a new trial, we should reverse the matter and remand for a new trial. She also claims that insufficient evidence supports the court's findings and that the court erroneously denied

1

her motion to disqualify opposing counsel. McRoy has failed to show any reversible error, and we, therefore, affirm the district court's order.

*Seeking a child support order, the State started this case.*

This case started in 2006 when the Department of Social and Rehabilitation Services filed this action on behalf of McRoy seeking child support from Adrian Elmore, Sr. for their son. In response, Elmore asked the court to establish a custody order setting up parenting time with his son. From June 2007 to June 2013, while the child lived with McRoy, Elmore paid her $601 per month child support and he exercised parenting time. The situation then changed.

In July 2013, McRoy gave notice to Elmore that she intended to move to Indiana and was going to take their child with her. Elmore objected to moving the child. Eventually, in 2014 the court took evidence in what the parties call a "move-away" trial. The court decided that the best interests of the child were to remain with Elmore in Kansas. Once his son started living with Elmore, he enrolled the boy in a nearby parochial school.

In October 2014, a hearing officer ordered McRoy to pay Elmore $389 per month as child support. Both parties sought judicial review of that order. On January 30, 2015, a de novo hearing was held. An assigned district judge, after chastising the parties for making it so confusing, offset the different amounts of arrearages owed by both parents to each other. It ruled that McRoy owed Elmore for overpayment of child support and she could repay it at the rate of $100 per month.

For purposes of child support computation, the court ruled that Elmore's annual income was $45,408 and imputed McRoy's at $25,000. McRoy historically worked 30 hours per week, and the judge used the same hourly wage and imputed it to 40 hours per

2

week. The income tax exemption went to Elmore, but McRoy was to receive some tax credit on the child support worksheet. The court directed that the parties' other children were to be taken into account on the child support worksheet. After approving the worksheet prepared by Elmore's attorney, the judge ordered McRoy to pay $331 per month as child support.

Later, a different judge denied McRoy's motion to alter or amend the de novo judgment but said he would hold a hearing on child support if motions were filed by August 31, 2015. McRoy did not file her motion until September 10, 2015. But by the time the court was ready to hear the matter in October, McRoy had filed her notice of appeal and docketing statement with this court. Accordingly, the court ruled it had no jurisdiction to proceed and stayed any further action.

*McRoy argues the judge failed to follow the child support guidelines.*

For the sake of clarity, we have condensed McRoy's claims on this point into six:

      (1) education expenses;
      (2) income tax exemption;
      (3) determination of Elmore's income;
      (4) medical expenses;
      (5) extended parenting time adjustment; and,
      (6) Elmore's child support overpayment to McRoy.

We will look at them in that order.

The standard of review for child support issues varies with the issue: interpreting the guidelines, establishing a child support order, and reviewing the amount of the order. Interpretation of the Kansas Child Support Guidelines (2015 Kan. Ct. R. Annot. 111), is a

question of law over which we exercise unlimited review. *In re Marriage of Thurmond*, 265 Kan. 715, 717, 962 P.2d 1064 (1998). In reviewing an order establishing child support we look for substantial competent evidence. *In Re Marriage of Brand*, 273 Kan. 346, 350, 44 P.3d 321 (2002). In our review of a district court's order concerning the amount of child support owed, we examine the question to see if there is an abuse of discretion. *In re Karst*, 29 Kan. App. 2d 1000, 1001, 34 P.3d 1131 (2001). The appellant bears the burden of showing an abuse of discretion has occurred. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

As always, discretion is abused when a decision is:

- fanciful, arbitrary, or unreasonable;
- based upon an error of law; or
- based upon an error of fact. See *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

The Guidelines control the district court's establishment and review of child support orders. Following the Guidelines is mandatory, and any deviation from the Guidelines must be justified by written findings in the journal entry. Deviations from the Guidelines that are not supported by written findings are reversible error. *In re Marriage of Thurmond*, 265 Kan. at 716.

**Education Expenses**

McRoy misunderstands the district court's order on this point. McRoy states: **"The tuition orders require Ms. McRoy to pay $4,350.50 per year just for private school tuition."** This argument is not based upon the district court's ruling. Instead, the court ruled that McRoy was required to pay Elmore $3,150.50 for *prior* educational

4

expenses and $100 a month for extraordinary expenses to assist Elmore in bearing the burden of the majority of education costs going forward.

The $3,150.50 is reimbursement for prior educational expenses and is not owed yearly as McRoy argues in her brief. The total of $3,150.50 was based at least in part on the tuition of the child's private school. The child began attending the private school in 2013 when he moved in with Elmore. The school's tuition is $4,500 per year. After the hearing, the district court found it was in the best interests of the child to continue attending the private school.

McRoy argues the district court did not follow the Guidelines when it awarded Elmore the reimbursement for educational expenses. "The purpose of child support is to provide for the needs of the child. The needs of the child are not limited to direct expenses for food, clothing, school, and entertainment." Guidelines § II.A. The court awarded Elmore $3,150.50 as a reimbursement for educational expenses. Such an order is reviewed for substantial competent evidence. See *Brand*, 273 Kan. at 350.

At the de novo hearing, the district court considered arguments and evidence from both parties. Elmore presented a spreadsheet which contained the claimed educational expenses, which were equally split. Unfortunately, the spreadsheet is not included in the record on appeal.

Because McRoy bears the burden of designating a record that sufficiently shows error, and the evidence the district court relied upon is not included in this record on appeal, we must conclude the district court's order was based on substantial competent evidence. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013).

5

Moving on, for the same reason, we conclude that the district court did not abuse its discretion in determining the amount owed for education expenses. A challenge for the amount of child support owed is reviewed for an abuse of discretion. *Karst*, 29 Kan. App. 2d at 1001. McRoy bears the burden of showing discretion was abused. *ONEOK*, 296 Kan. at 935. McRoy's argument concerning the amount of child support misinterprets the district court's order. The $3,150.50 is not a yearly amount owed by her, but rather is a reimbursement. Based upon the absence of evidence from the record, this court cannot conclude the district court acted unreasonably. We now look at the tax treatment.

**Tax Exemption**

McRoy claims the district court erred by ordering that Elmore be allowed to claim an income tax exemption without any consideration towards her in violation of the Guidelines § IV.E.3. The record contradicts McRoy's claim that no consideration was given to her.

The journal entry from the de novo hearing states that for tax purposes, Elmore is entitled to claim the child each year as a dependent. The child support worksheet, which was used to base the amount of child support, indicates a $50 per month credit for income tax considerations was given to McRoy. McRoy's assertion that the district court erred by allowing Elmore to claim the child as a dependent on his income taxes without giving consideration for the tax implications is unfounded.

**Elmore's Income**

McRoy attacks the court's findings in two ways. First, she claims the court should have included undisclosed income for Elmore. Second, she claims the court erred when it imputed income to him.

6

We look first at the Guidelines. Gross income is defined as "income from all sources, including that which is regularly or periodically received . . . ." Guidelines § II.D. The district court's determination of income is a finding of fact which is reviewed for substantial competent evidence. See *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007). The court does not reweigh conflicting evidence, evaluate witness' credibility, or determine questions of fact. 283 Kan. at 19.

We turn first to the claim of undisclosed income. McRoy alleges that Elmore has several sources of income. She contends Elmore received income from rent on Section 8 housing, from the sale of that rental property, and from engaging in remodeling work. The record does not contain any of this information.

At the de novo hearing, McRoy told the district court that Elmore received income from the sale of a house. McRoy also claims Elmore works side jobs that were not calculated in his income. She told the court about these side jobs and said one of her friends obtained a quote from Elmore for a side job. However, no evidence was submitted to the court. When determining the amount of Elmore's income, the district court did not consider these allegations of unreported income. Rather, the district court based Elmore's income on the pay rate to which he testified—$22 per hour. Because the district court's determination of Elmore's income is based, at least in part, on his testimony, there is substantial competent evidence to support the finding that his annual income was $45,408. Making a determination concerning the alleged unreported income would require this court to reweigh evidence and make findings of fact. We cannot do this. See *LSF Franchise*, 283 Kan. at 19. Based upon the evidence presented, the district court did not make an unreasonable determination of Elmore's income. Simply put, the court did not abuse its discretion.

We cannot agree with McRoy's assertion that the district court imputed Elmore's income. The district court did not impute Elmore's income at all. See Guidelines § II.F.

7

The district court found that Elmore was paid at a rate of $22 per hour and worked 40 hours per week. From these numbers, the district court calculated Elmore's annual income to be $45,408. A calculation of income based upon a person's testimony is not an imputation of income in contravention of the Guidelines. It is a calculation based on evidence.

**Unreimbursed Medical Expenses**

The district court based its findings concerning unreimbursed medical expenses upon evidence submitted by Elmore. This evidence the district court relied upon is not included in the record on appeal. McRoy has failed to designate a record that supports a finding of any error. Because the evidence is not contained in the record, any reversal of the district court's decision would require this court to make its own findings of fact, which we are not in a position to do. See *LSF Franchise*, 283 Kan. at 19. There is no showing that the district court abused its discretion in awarding reimbursement for medical expenses.

**Adjustments to Child Support for Extended Parenting Time**

McRoy claims the district court erred by not granting an extended parenting time adjustment under the Guidelines § IV.E.2.c. This issue was not raised at the de novo hearing or in the motion to alter or amend, which are the subjects of this appeal. This issue was, however, raised in McRoy's motion to modify child support. But the district court did not rule on this motion. Therefore, we cannot review this issue.

**Elmore's Overpayment of Child Support**

McRoy argues the district court erred in finding that Elmore was entitled to reimbursement for child support he had overpaid to her. McRoy argues the record is

unclear whether the district court's pronouncement of both the $455 and the $1,400 overpayments are partially coextensive.

While McRoy is correct that the district court's pronouncement was unclear, the journal entry from the hearing does not include the $455 overpayment of child support. The only overpayment mentioned in the journal entry is the $1,400 overpayment. Thus, the question becomes whether the district court erred in granting Elmore the $1,400 overpayment of child support.

We review this question for substantial competent evidence. See *Brand*, 273 Kan. at 350. The transcript of the hearing shows that Elmore presented evidence which showed an overpayment in the amount of $1,400. This documentation is not included in the record on appeal. McRoy has the burden of designating the record sufficiently to show error occurred. *Friedman*, 296 Kan. at 644-45. Without the documentation which the district court relied upon, we cannot determine if the district court lacked substantial competent evidence to make its decision or abused its discretion. McRoy has not met her burden on this point.

We conclude the district court did follow the Guidelines in making its award in this case.

*Filing a notice of appeal and docketing statement stops district court action.*

In her second argument on appeal, McRoy contends that the district court should have ruled on her motion to modify child support filed on September 10, 2015. This all came after the court denied her first motion to alter or amend the judgment. We note that McRoy filed her notice of appeal on September 21, 2015, and the docketing statement on October 13, 2015. The court set the hearing on this motion on October 19, 2015, but stayed any further action because it lacked jurisdiction.

9

Fundamentally, when an appeal is docketed with this court, the district court no longer has jurisdiction to modify its order. *In re Estate of Robinson*, 232 Kan. 752, 754, 659 P.2d 172 (1983). An appeal is docketed when the docketing statement is filed. See *Harsch v. Miller*, 288 Kan. 280, 286, 200 P.3d 467 (2009); Supreme Court Rule 2.04 (2015 Kan. Ct. R. Annot. 15).

McRoy argues she should have been permitted a full hearing on the posttrial motion. For support, McRoy cites *ARY Jewelers, L.L.C. v. Krigel*, 277 Kan. 464, 474, 85 P.3d 1151 (2004). McRoy's argument takes the *Krigel* court's opinion out of context. In *Krigel*, ARY Jewelers filed a posttrial motion after the appeal was docketed. The district court denied the motion; however, the *Krigel* court determined the district court erred in its denial of the motion. 277 Kan. at 475. The Kansas Supreme Court decided to review a portion of the district court's decision in the interest of judicial economy. 277 Kan. at 474.

In *Martin v. Martin*, 5 Kan. App. 2d 670, 674-75, 623 P.2d 527 (1981), a panel of this court recognized a preferable procedure, which was alluded to by the *Krigel* court. The *Martin* panel, quoting from 11 Wright & Miller, Federal Practice and Procedure: Civil § 2873 (1973), a treatise on federal civil procedure, stated the preferable practice on motions for relief from a final judgment was for the district court to consider the motion even if a notice of appeal had been filed. See 5 Kan. App. 2d at 674-75.

The procedure of having the district court review a motion for relief from final judgment after a case has been appealed may be preferable as alluded to in *Krigel*. But the *Robinson* court's holding that a district court does not have jurisdiction to modify a judgment after the appeal has been docketed is still binding precedent. Here, McRoy sought to have the district court modify the order after she filed her notice of appeal and docketing statement with this court. Therefore, the district court correctly concluded that it did not have jurisdiction to modify the judgment. There is no reversible error here.

10

*McRoy's argument on substantial competent evidence is not clearly stated.*

We do not understand exactly what McRoy is arguing in this section of her brief. We have already held in her first issue that the district court's findings are supported by substantial competent evidence. If, instead, she is arguing that the district court should have allowed her an opportunity to present the same evidence she presented to the hearing officer, then the issue becomes simply her failure to meet her burden of proof. Our Supreme Court has clearly held in *Bowen v. Hathaway*, 202 Kan. 107, 110, 446 P.2d 723 (1968), that the burden of proving a disputed fact or issue rests upon the party and remains with him or her throughout the trial. We have no remedy on appeal for a party that fails to prove his or her case.

*The court refused to disqualify Elmore's attorney.*

McRoy argues the district court erred by not disqualifying Elmore's attorney, Courtney J. Whiteley, for alleged improper ex parte communications. This issue was first raised before the district court in a motion filed by McRoy on August 4, 2014. The motion and transcript of the hearing are not included in the record on appeal. The court denied the motion to disqualify counsel, holding there was no improper ex parte communication.

On appeal, McRoy claims two additional contacts between Whiteley and the district court that are allegedly improper ex parte communications. These communications were never raised before the district court. Generally, an issue not raised before the district court cannot be raised for the first time on appeal. *Wolfe Electric Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). But McRoy argues these can be raised as either a question of law based upon proved or admitted facts or as an issue that implicates the fundamental right to due process. See *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008). McRoy argues the alleged ex parte communications

violate the fundamental right to due process, because by their nature, they prevent her from being heard.

The first new allegation of improper ex parte communication involves the income tax consideration. McRoy claims there was an ex parte communication about allowing Elmore to claim the child as a dependent. However, the record shows the district court considered the income tax issue in open court with McRoy present. The record does not support that any ex parte communication occurred in this respect.

The second new allegation of improper ex parte communication emerges from an e-mail Whiteley sent that McRoy has included as an appendix to her brief. The appendix is not considered part of the record on appeal. See *Romkes v. University of Kansas*, 49 Kan. App. 2d 871, 886, 317 P.3d 124 (2014). Even if we were to consider the e-mail, the contents show the ex parte communication did not affect McRoy's substantial rights.

The content of the e-mail shows that it was not a meaningful time at which McRoy had a right to be heard. The e-mail concerned Whiteley missing an e-mail which ordered Elmore to send by overnight delivery a signed form by a certain date which had passed. This is not a substantial proceeding in which an ex parte communication would violate McRoy's right to due process. Due process requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner.' [Citation omitted.]" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

We also note that the judge forwarded Whiteley's e-mail to McRoy. He told Whiteley: "Whenever the court receives any ex parte communication of any kind, it is shared with the other party. Whether the communication is from a pro se litigant or an attorney. Accordingly, I am providing a copy of your communication to Ms. McRoy."

12

Because these two new allegations are raised for the first time on appeal but do not meet the requirements for an exception to the general rule in *Wolfe*, we will not consider them.

We turn now to the original allegations that were raised in McRoy's motion to disqualify Whiteley. The district court is granted wide discretion when determining whether to disqualify an attorney for alleged misconduct. *State v. Hurd*, 298 Kan. 555, 571-72, 316 P.3d 696 (2013).

Interestingly, McRoy does not raise an argument that the district court abused its discretion in denying her motion to disqualify Whiteley. Further, any implication she makes that the district court abused its discretion is not supported with relevant authority. An issue raised and improperly supported by authority is deemed waived or abandoned. See *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015). Therefore, we deem the matter abandoned since she offers us no authority to support her position.

When considering a motion to disqualify an attorney, the district court "must balance several competing considerations, including the privacy of the attorney-client relationship, the prerogative of a party to choose counsel, and the hardships that disqualification imposes on the parties and the entire judicial process." *National Bank of Andover, N.A. v. Aero Standard Tooling, Inc.*, 30 Kan. App. 2d 784, 791, 49 P.3d 547 (2002). Based upon the scant record and unclear brief, McRoy has not carried the burden of showing the district court abused its discretion in denying her motion to disqualify Whiteley.

Affirmed.