No. 62,491

MARY R. GREENHAW and KANSAS LAND DEVELOPMENT COMPANY, *Appellees*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON; WILLIAM E. FRANKLIN, JOHNNA LINGLE, KENT E. CRIPPIN, MURRAY L. NOLTE, and BRUCE R. CRAIG, as Commissioners for said Board; BEVERLY L. BAKER, as County Clerk of said County; WILLIAM O'BRIEN, as County Treasurer of said County; and PRATHER H. BROWN, as County Appraiser of said County, *Appellants*.

(774 P.2d 956)

Opinion filed May 26, 1989.

*Philip S. Harness*, county counselor, argued the cause and *Bernis G. Terry*, assistant county counselor, was on the briefs for appellants.

*Robert C. Londerholm*, of Hackler, Londerholm, Corder, Martin & Hackler, Chartered, of Olathe, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

LOCKETT, J.: The Johnson County Board of County Commissioners, the county clerk, the county treasurer, and the county appraiser (County) appeal a declaratory judgment entered by the Johnson County District Court awarding Mary R. Greenhaw and the Kansas Land Development Company (taxpayers) post-judgment interest on a tax refund pursuant to K.S.A. 16-204.

This is a continuation of the dispute in *Board of Johnson County Comm'rs v. Greenhaw*, 241 Kan. 119, 734 P.2d 1125 (1987) (*Greenhaw I*). On October 5, 1983, the Board of Tax Appeals (BOTA) entered an order pursuant to K.S.A. 79-2005 directing the County to refund certain real property taxes which

the taxpayers had paid under protest. BOTA's order further provided for the payment of interest if the refund was not tendered within 60 days. The County appealed and the district court, in a journal entry of judgment dated July 26, 1985, affirmed the taxpayers' right to the refund but held that BOTA was without authority to order the payment of interest. We affirmed that decision in *Greenhaw I.*

On June 3, 1987, the County proffered to the taxpayers a refund check for $124,585.88. The taxpayers refused the check, claiming that interest had begun to accrue under K.S.A. 16-204 on July 26, 1985, the date the journal entry of judgment was filed with the clerk of the district court. To establish their right to post-judgment interest, the taxpayers filed a petition for declaratory judgment. On August 20, 1987, the district court ordered payment of the undisputed amount into the court for investment until the matter was resolved.

On June 3, 1988, the district court held that its 1985 journal entry was a judgment within the meaning of K.S.A. 16-204. Pursuant to 16-204, the taxpayers were awarded post-judgment interest from the date of the 1985 judgment. The district court further held that K.S.A. 16-204 establishes the applicable rates of interest at 15% and 10.5% per annum for the periods of July 26, 1985, to June 30, 1986, and July 1, 1986, to June 3, 1987, respectively. The County appeals this judgment and the taxpayers cross-appeal as to the finding of a 10.5% interest rate for the period indicated.

The County argues that the taxpayers' claim for post-judgment interest is res judicata because it could have been addressed in *Greenhaw I.* The doctrine of res judicata is a judicially created doctrine which recognizes that, once a matter has been litigated between the parties by a court of competent jurisdiction, that matter should not be relitigated. The County cites *Hutchinson Nat'l Bank & Trust Co. v. English,* 209 Kan. 127, 130, 495 P.2d 1011 (1972), for the proposition that res judicata applies "not only as to every question actually presented, considered and decided but also to every question which might have been presented and decided."

An issue is res judicata when four conditions concur: (1) identity in the things sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in

the quality of the persons for or against whom the claim is made. *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 690, 751 P.2d 122 (1988). The taxpayers contend there is neither an identity in the things sued for nor an identity of the cause of action because the County did not refuse to pay post-judgment interest until after *Greenhaw I* was decided. In essence, they argue that the present issue was not ripe during the prior litigation.

In *Greenhaw I,* the taxpayers sued for the recovery of wrongfully collected taxes and the interest BOTA had awarded. Here, they are defending the post-judgment interest awarded by the district court. The things sued for are not identical. In the present case, the cause of action is based on K.S.A. 16-204, a statute that was not addressed in *Greenhaw I.* Finally, the County did not refuse to pay post-judgment interest until after *Greenhaw I* was decided. For these reasons, the doctrine of res judicata does not bar the taxpayers' claim for post-judgment interest.

If not entitled to post-judgment interest under 16-204, the taxpayers argue they are entitled to interest in the form of common-law damages for the unlawful detention of their money. They cite several eminent domain cases wherein this court upheld the payment of interest by various governmental entities and argue that the rationale applied in those cases should also apply here. The district court did not address this issue in its opinion, although the taxpayers argued it.

The eminent domain cases are clearly distinguishable and the rationale in those cases should not be extended to interest on a tax refund. As for the substance of the taxpayers' claim, interest is a creature of statute, not the common law, and is, therefore, recoverable only by statute or contract.

K.S.A. 16-204 provides for interest on judgments "[e]xcept as otherwise provided in accordance with law, and including any judgment rendered . . . against the state or any agency or political subdivision of the state."

The taxpayers discuss, at great length, the meaning of the word "any" as used in 16-204. They provide dictionary definitions of the word, urge that its plain meaning be given effect, and offer the following interpretation: "[Every] judgment which, either in whole or in part, requires or has the legal effect of requiring one

party to a suit to pay an amount or sum of money to another party falls within the scope of K.S.A. 16-204."

Prior Kansas cases have determined that the legislature's use of the word "any" in a statute is not synonymous with "every." In *State v. Jehlik*, 66 Kan. 301, 71 Pac. 572 (1903), this court considered a statute which allowed "any" unmarried woman to institute a bastardy action and held that an unmarried woman, who was an imbecile and incompetent to testify, could not commence such an action in her own name. In *State v. Monahan*, 72 Kan. 492, 84 Pac. 130 (1905), this court considered the following language in the Kansas Constitution Bill of Rights § 7: "No . . . property qualification shall be required . . . for any vote at any election." The *Monahan* court determined that it was unnecessary to construe this clause literally as applying to every election whatsoever. 72 Kan. at 496. We agree with the *Monahan* court and conclude that it would be superfluous to cite further instances in which general language of this nature has been given a restricted meaning.

The County argues that the district court's journal entry of July 26, 1985, "simply upheld the BOTA order in certain respects and overruled it in other respects" and did not specifically enter a *money* judgment against the County. The County asserts that before post-judgment interest may be awarded under 16-204, the journal entry of judgment must state a specific sum of money. The County cites 47 C.J.S., Interest & Usury § 25, and *Jeppe v. Blue Cross*, 67 Ohio App. 2d 87, 425 N.E.2d 947 (1980), in support of its position. Neither authority is persuasive. In *Jeppe*, the Ohio court held that a declaratory judgment, which merely confirmed coverage under an insurance policy, could not bear interest as a money judgment. While we agree with the ruling in *Jeppe*, we disagree with the County's claim that there was no specific amount of money awarded by the district court in this case.

It is a fundamental rule that a judgment should be complete and certain in itself, and that the form of the judgment should be such as to indicate with reasonable clearness the decision which the court has rendered, in order that the parties may be able to ascertain the extent to which their rights and obligations are fixed, and so that the judgment is susceptible of enforcement in the manner provided by law. *Kendall v. Kendall*, 218 Kan. 713,

717, 545 P.2d 346 (1976). The legislature defines judgment as "the final determination of the rights of the parties in an action." K.S.A. 60-254. This court has used the same definition. *See, e.g., Roe Village, Inc. v. Board of County Commissioners*, 195 Kan. 247, 248, 403 P.2d 970 (1965). The journal entry here meets this test.

The district court's journal entry of judgment need not specifically recite a sum of money for post-judgment interest to be awarded under 16-204. Although a specific sum of money is not stated in the journal entry, the amount of the refund is readily determinable because the district court affirmed that portion of the BOTA order which stated the amount of taxes to be refunded. The district court's journal entry of July 26, 1985, when read in conjunction with BOTA's order, is a judgment for a specific sum of money which fixes the rights and obligations of the parties with reasonable clearness.

The County draws an analogy between the present case and *Woods v. Jacob Dold Packing Co.*, 141 Kan. 363, 41 P.2d 748, *modified* 141 Kan. 748, 43 P.2d 786 (1935), where this court set aside the award of interest in a workers' compensation appeal. *Woods* was an appeal from a district court order which required that interest be paid in conjunction with certain workers' compensation death benefits. *Woods* bears many similarities to the present case: (1) the benefits were awarded by an administrative agency; (2) the benefits were awarded under a statute which did not provide for the payment of interest; (3) the district court ordered that post-judgment interest be paid; and (4) the precursor to K.S.A. 16-204, R.S. 1923, 41-104, in effect at the time of the *Woods* case, provided in relevant part: "All judgments of courts of record . . . shall bear interest from the day on which they are rendered . . . except as herein otherwise provided."

The major dissimilarities between *Woods* and the present case are: (1) the underlying statutes involved—a statute which conferred a benefit (workers' compensation), as opposed to a statute which outlines a remedy (the tax appeal procedure); and (2) R.S. 1923, 41-104 did not specifically apply to the State or its political subdivisions, as does K.S.A. 16-204.

In finding that the district court could not award post-judgment interest in that case, the *Woods* court said:

"An award of compensation has some aspects which are fundamentally different

from an ordinary money judgment. It is not the culmination of a jury trial for the recovery of money as contemplated in section 5 of the bill of rights. And the statute touching the imposition of interest is no more controlling on this matter than on many others which frequently, but ineffectually, have been invoked in workmen's compensation cases. [Citations omitted.] The fact that an award of compensation may have to be enforced as an ordinary judgment [citation omitted] does not enlarge or alter the substantive rights and liabilities of the parties to a compensation case, since an allowance of interest is a matter of substance, not of mere procedure." 141 Kan. at 749.

In its first consideration of the case, the *Woods* court observed that the workers' compensation act initially allowed interest on overdue payments but, when the act was revised in 1927, the legislature deliberately eliminated the interest provision. The court recognized that the compensation act was complete in itself and borrowed nothing from the civil code or any other statute. 141 Kan. at 365. Subsequent to *Woods*, the legislature set forth specific penalties for employers who failed to pay compensation prior to and after an award. See K.S.A. 1988 Supp. 44-512a, -512b.

Because the workers' compensation act, unlike the tax appeal statutes, is complete in itself and borrows nothing from the code of civil procedure or any other statute, the argument based on *Woods* is not persuasive.

The County cites *State v. State Tax Com'n of Missouri*, 651 S.W.2d 130, 134 (Mo. 1983), wherein the Missouri Supreme Court held that "the state is not liable for interest on overpaid [vehicle registration] taxes in the absence of a statute so providing" (citing *International Business Mach. Corp. v. State Tax Com'n*, 362 S.W.2d 635, 641 [Mo. 1962]). In *International Business Mach. Corp.*, the Missouri court held that the State was not liable for interest on overpaid sales taxes. Although Missouri had an interest on judgments statute similar to 16-204, the court found "a public policy against refunds for taxes." 362 S.W.2d at 641.

The County contends that, under our public policy and the rationale of the Missouri cases, K.S.A. 79-2005, when read in conjunction with K.S.A. 74-2426, deprives the district court of jurisdiction to award post-judgment interest. First, the County points out that 79-2005 specifically provides for the payment of interest only on no-fund warrants. It argues that this is evidence of the legislature's intent to allow interest only on no-fund warrants and to prohibit the payment of interest on all other tax

refunds. The County cites *In re Tax Protests of Midland Industries, Inc.*, 237 Kan. 867, 703 P.2d 840 (1985), and *Greenhaw I* to support its position. In both cases, this court applied that analysis and held that prejudgment interest may not be awarded on 79-2005 tax refunds. The County argues that the *rationale* in *Midland Industries* and *Greenhaw I* does not distinguish between prejudgment and post-judgment interest and that those cases clearly prohibit the allowance of post-judgment interest on such refunds.

The holdings in both *Midland Industries* and *Greenhaw I* are clearly limited to prejudgment interest. In *Midland Industries*, the district court had ordered Sedgwick County to pay interest on wrongfully collected taxes from the date the taxes were initially paid until the County tendered a refund. The County limited its appeal to that part of the order dealing with prejudgment interest. We held: "Since 79-2005 does not specifically provide for the payment of interest except on no-fund warrants, the district court was incorrect in awarding prejudgment interest." *Midland Industries*, 237 Kan. at 872. We similarly held in *Greenhaw I*: "Since 79-2005 does not specifically provide for the payment of interest except on no-fund warrants, the district court was correct in denying prejudgment interest." 241 Kan. at 129. It should be noted that K.S.A. 16-204, the post-judgment interest statute, was not at issue in either case.

The County's last contention is that the district court's jurisdiction on appeal is limited by 74-2426. In essence, the County argues that the district court has no authority to order that which is beyond BOTA's jurisdiction.

We have previously decided that BOTA has no jurisdiction to award either prejudgment or post-judgment interest. The district court has authority under K.S.A. 74-2426 to review the BOTA order. Whether the district court's judgment imposes post-judgment interest requires an analysis of K.S.A. 16-204 and 79-2005. Does K.S.A. 79-2005 operate under the exception clause of 16-204 to preclude the recovery of post-judgment interest on the tax refund?

The relevant language of 16-204 is: "Except as otherwise provided in accordance with law, and including any judgment . . . against the state or any agency or political subdivision of the state: . . . (c) Any judgment rendered by a court of

this state . . . shall bear interest . . . ." This statute is clearly broad enough to include the present judgment. As for 79-2005, the following language is relevant:

"(k) In the event the board orders that a refund be made and no appeal is taken from such order, the county treasurer shall, as soon thereafter as reasonably practicable, refund to the taxpayer such protested taxes . . . ."

The legislative history of 79-2005 (committee minutes and amended bills) does not indicate whether that statute was intended to supersede 16-204. However, the following points indicate a legislative intent for 16-204 to control in this situation: (1) the language in 16-204 is unambiguous and clearly applicable to local governments, and (2) 79-2005(k) applies to refunds only when "no appeal is taken."

We have previously recognized that the loss of the use of money ought to be compensated, whether occasioned by delay or default of an ordinary citizen or of the State or one of its political subdivisions. *Shapiro v. Kansas Public Employees Retirement System*, 216 Kan. 353, 357, 532 P.2d 1081 (1975). In *City of Lenexa v. Board of Johnson County Comm'rs*, 237 Kan. 782, 786-87, 703 P.2d 800 (1985), we acknowledged that if the legislature, in its wisdom, deemed it advisable that the State be liable for interest on judgments, it could enact appropriate legislation which will leave no doubt on the matter. We recognized that if a statute exists which provides for the granting of interest by the court against political subdivisions, then such is proper. We then stated that 16-204 authorized the assessment of post-judgment interest against the State and its political subdivisions.

Prior to the amendment of 79-2005 in 1980, county taxing officials had no right of appeal to the district court where BOTA entered an order favorable to a taxpayer seeking recovery of taxes paid under protest. See *Board of Johnson County Comm'rs v. Ameq, Inc.*, 227 Kan. 93, 94-95, 605 P.2d 119 (1980). When the legislature granted the taxing authority the right to appeal an unfavorable ruling to the district court, it also imposed the burden of paying post-judgment interest on the judgment should its appeal fail.

## The Issue on Cross-Appeal

The taxpayers assert, without explanation, that the district court erred in finding the interest rate from July 1, 1986, to June 30, 1987, to be 10.5% per annum. On June 3, 1988, the district

court held that post-judgment interest had begun to accrue on July 26, 1985, the date of its previous judgment. The district court then determined the rate of interest, applicable to the 1985 judgment, based upon K.S.A. 16-204(c), (e) and the Kansas Register.

K.S.A. 16-204(c) provides:

"Any judgment rendered by a court of this state *on or after July 1, 1982, and before July 1, 1986*, shall bear interest as follows:

"(1) On and after the day on which the judgment is rendered and before July 1, 1986, at the rate of 15% per annum; and

"(2) on and after July 1, 1986, at the rate provided by subsection (e)." (Emphasis added.)

K.S.A. 16-204(e) provides:

"(1) On and after the effective date of this act, the rate of interest on judgments rendered by courts of this state pursuant to the code of civil procedure shall be at a rate per annum: (A) Which shall change effective July 1 of each year for both judgments rendered prior to such July 1 and judgments rendered during the twelve-month period beginning such July 1; and (B) which is equal to an amount that is four percentage points above the discount rate (the charge on loans to depository institutions by the New York federal reserve bank as reported in the money rates column of the Wall Street Journal) as of July 1 preceding the date the judgment was rendered. The secretary of state shall publish notice of the interest rate provided by this subsection (e)(1) not later than the second issue of the Kansas register published in July each year."

The Kansas Register, 5 Kan. Reg. 1026 (1986), provides: "[T]he rate of interest on judgments rendered by courts of the State of Kansas pursuant to the code of civil procedure shall be 10.50 percent during the period of July 1, 1986 through June 30, 1987." There was no error.

The judgment of the district court is affirmed.

McFARLAND, J., dissenting.