No. 89,543

ARY JEWELERS, L.L.C., *Appellant,* v. SCOTT KRIGEL, INDIVIDUALLY AND AS TRUSTEE OF THE SCOTT W. KRIGEL REVOCABLE TRUST, *Appellees.*

(85 P.3d 1151)

Opinion filed March 19, 2004.

*Barry L. Pickens,* of Spencer Fane Britt & Browne, LLP, of Kansas City, Missouri, argued the cause, and *Michael C. Leitch,* of the same firm, was with him on the briefs for appellant.

*Sanford P. Krigel,* of Krigel & Krigel, P.C., of Kansas City, Missouri, argued the cause, and *Karen S. Rosenberg,* of the same firm, was with him on the briefs for appellees.

The opinion of the court was delivered by

NUSS, J.: This case involves a dispute about interest accruing on escrowed funds. ARY Jewelers, L.L.C. (ARY) contracted to buy Krigel's, Inc., which owned and operated a jewelry business in several Midwestern states. After the sale failed, a Johnson County District Court granted summary judgment to ARY and ordered return of its $1.5 million in escrow. Scott Krigel, individually and as trustee of the Scott W. Krigel Revocable Trust which owned the company stock (collectively the Krigels), appealed not only the grant of summary judgment to ARY but also the denial of their own summary judgment motion based upon breach of contract.

After the Krigels' appeal was docketed, ARY filed a motion essentially seeking prejudgment and postjudgment interest at the Kansas statutory rates on its $1.5 million. The court denied the motion, and ARY appealed. After the Court of Appeals denied ARY's motion to consolidate, we transferred both cases on our own motion pursuant to K.S.A. 20-3018(c).

We affirmed the district court's summary judgment for ARY on the substantive issues in *ARY Jewelers v. Krigel,* 277 Kan. 27, 82 P.3d 460 (2003) *(ARY I).* We essentially ruled that under the express terms of paragraph 4(c) of the Stock Purchase Agreement (SPA), the SPA was null and void as of December 19, 2000, because of an unfulfilled financing condition.

Concurrent with the release of *ARY I,* we ordered the parties to submit supplemental briefs on the issue of prejudgment and postjudgment interest by January 30, 2004, since our holding the SPA null and void placed in doubt (1) the district court's ruling that per the SPA and related agreements the parties had "agreed" upon the interest rate and (2) the viability of the SPA's choice of law provision. The parties timely complied.

Accordingly, the central issue on this appeal is whether the district court correctly concluded that the parties had agreed upon the rate of interest to accrue on the escrowed funds and, if not, whether Missouri or Kansas law supplies the statutory rate of interest.

Other issues include whether the district court had jurisdiction to address the interest issue, whether interest is available in declaratory judgment actions, and whether the awarding of prejudgment and postjudgment interest is discretionary with the district court.

We hold that the district court had jurisdiction, but that it erred in holding the parties had agreed upon an interest rate. We therefore reverse and remand for a determination of the amount of interest accruing under the statutes as described in the opinion.

## FACTS

Krigel's, Inc., a family-owned Kansas corporation operating jewelry stores across several Midwestern states, began having financial problems early in 2000 and soon became insolvent. Scott Krigel (Scott), on behalf of the Scott W. Krigel Revocable Trust, began to seek a buyer for the family business. On November 21, 2000, following extended negotiations with Gohar Husain, both Scott on behalf of his trust and Husain on behalf of ARY, signed the SPA, which underlies the dispute in this case and in its companion, *ARY I.*

The SPA called for Krigel's, Inc., to file for Chapter 11 bankruptcy. After approval of the bankruptcy court and sale closing, ARY was to purchase all of the stock of Krigel's, Inc. According to SPA paragraph 1.(b), at the time of closing—which was to be no later than April 30, 2001—the stock purchase price of $50,000, plus accrued interest, was to be paid in cash to Scott's trust from the $50,000 ARY escrowed at Assured Quality Title Company exclusively for that purpose. Upon closing, ARY was also to pay 60% of the debt owed to each of Krigel's, Inc.'s unsecured creditors and assume responsibility for or pay off all debt Krigel's, Inc., owed to its only secured creditor, Foothill Capital Bank (Foothill Capital).

The same day as the SPA's execution, Husain, again on behalf of ARY, and Scott, on behalf of himself and Krigel's, Inc., signed a Consulting and Noncompetition Agreement for Scott Krigel (consulting agreement). It required ARY to hire Scott as a consultant for up to 1 year and forbade him from competing with ARY in the area of existing Krigel's, Inc., stores for 2 years. In exchange for these considerations, ARY was to pay Scott the entire $1.45 million it placed in a second escrow account at Assured Quality Title exclusively for that purpose.

More specifically, both the consulting agreement at paragraph 9, and the SPA at paragraph 2, provided that at the time of closing, $950,000 for Scott's covenant not to compete, plus accrued interest, was to be paid to him from the escrowed funds. Additionally, paragraph 4 of the consulting agreement provided that $500,000 for Scott's consulting services was to be paid to him from the escrow in six equal monthly installments, with the first installment due at closing. It further provided that at the time of the final installment, Scott could "also withdraw all accrued interest on the $500,000."

Two other documents, the escrow agreements themselves, were also dated November 21, 2000, and were signed by ARY, Scott, and Assured Quality Title. Among other things, they provided Scott could direct the investment of ARY's funds with certain restrictions. The escrow agreement controlling the $1.45 million ARY deposited for Scott's services provided at paragraph 5:

"Escrowee [Assured Quality Title Company] shall invest and as necessary re-invest the Escrowed Funds in interest bearing securities issued, guaranteed or secured by the United States or the Federal Deposit Insurance Corporation as directed by Krigel for the account of Krigel."

The escrow agreement controlling the $50,000 ARY deposited for the stock purchase was essentially the same. It provided at paragraph 5:

"Escrowee [Assured Quality Title Company] shall invest and as necessary re-invest the Escrowed Funds in interest bearing securities issued, guaranteed or secured by the United States or the Federal Deposit Insurance Corporation as directed by Shareholder for the account of Scott W. Krigel."

The SPA provided at paragraph 9, and the consulting agreement at paragraph 19, that if ARY failed to provide proof of its ability to pay unsecured creditors prior to Krigel's, Inc.'s bankruptcy filing, or if it failed to pay the unsecured creditors on the effective date of the bankruptcy plan, then Scott and his trust would immediately be entitled "to receive all funds escrowed" pursuant to paragraphs 4 and 9 of the consulting agreement and paragraph 1(b) of the SPA.

The SPA also contains the "Foothill Capital financing condition" and provides at paragraph 4(c):

"(c) Within four weeks from the date hereof [December 19, 2000] Purchaser shall provide Seller with evidence of Foothill Capital's consent to the continued financing of Company's obligations to Foothill Capital. In the event Foothill Capital does not consent within the foregoing time period *this Stock Purchase Agreement and related agreements shall be void and of no further effect.*" (Emphasis added.)

SPA Paragraph 8(a) provides that the SPA and "any other agreements referenced herein," *i.e.*, the consulting agreement and two escrow agreements, "shall be governed and construed in accordance with the laws of the State of Missouri."

SPA Paragraph 8 continues at subsection (e) with integration language:

"Entire Agreement. This Agreement (including the Exhibits referred to herein) sets forth the entire Agreement and understanding of the parties with respect to the transactions contemplated hereby and supersede[s] all prior agreements, arrangements, and understandings, whether written or oral, related to the *subject*

matter hereof. No representation, promise, inducement or statement of intention has been made by any party hereto which is not embodied in the Agreement or in the Exhibits attached hereto or the written statements, certificates or other documents delivered pursuant hereto."

The consulting agreement expresses a similar message. Paragraph 13 states: "Entire Agreement. This Agreement contains the entire agreement of the parties hereto with respect to the matters set forth herein."

The transaction did not close by the specified date of December 19, 2000, but ARY and Krigel's, Inc., continued to negotiate with Foothill Capital to try to salvage the transaction. Finally, on March 28, 2001, ARY notified Krigel's, Inc., that if Foothill Capital did not approve continued financing on the same terms as Krigel's, Inc., had enjoyed prior to insolvency, ARY would consider the SPA void.

Two days later, on March 30, 2001, ARY failed to close on the SPA and failed to pay Krigel's, Inc.'s unsecured creditors. Because of ARY's alleged failure to perform, the next day Scott made a demand on Assured Quality Title for release of the escrowed $1.5 million per the default provisions of the agreements. ARY contested the demand and claimed the entire transaction void due to Foothill Capital's failure to agree to continued financing on the same terms as Krigel's, Inc., had enjoyed prior to insolvency. ARY consequently requested the Krigels provide Assured Quality Title with a "joint written instruction" to release the $1.5 million to ARY. The Krigels failed to do so.

ARY then filed a petition for declaratory judgment in Johnson County District Court essentially seeking a judgment declaring that the SPA was null and void, that ARY was therefore relieved of any SPA obligation, and that ARY was entitled to return of its escrowed $1.5 million. Scott and his trust filed an answer and a counterclaim for breach of contract seeking possession of the funds.

After both parties filed motions for summary judgment, the court held that SPA paragraph 4(c), which contained the Foothill Capital financing condition, "affected" both parties. As a result, the court stated, "pursuant to SPA ¶¶ 5(c) and 6(a), ARY would also have had to waive it, *or Foothill's lack of consent to financing ren-*

*dered the SPA and related agreements null and void.*" (Emphasis added.) It concluded ARY had not waived the financing condition in writing. Accordingly, the SPA and consulting agreement were null and void as of December 19, 2000. As a result, the district court denied Krigels' motion for summary judgment, granted ARY's, and ordered Assured Quality Title to release the escrowed $1.5 million to ARY.

According to Krigels, the district court signed an initial journal entry of judgment on May 6, 2002. The journal entry in the record on appeal, however, is hand-dated May 28 and file-stamped May 29. Krigels filed a notice of appeal on May 30 and docketed their appeal with the Clerk of the Kansas Appellate Courts on June 4. On June 5, the district court issued an order setting Krigels' appellate bond at $10,000 and also providing that pursuant to agreement by Krigels, ARY was now entitled to direct investment of the escrowed funds, subject to the same conditions which had been in effect against Krigels per paragraph 5 of each escrow agreement.

On June 10, 2002, ARY filed a motion to modify the district court's journal entry of judgment. Specifically, it requested the court grant prejudgment interest in the amount of $100,596. According to ARY's calculations, this figure represented the difference between the amount that would have accrued on the escrowed funds at the Kansas statutory rate of 10% and the lower amount which had actually accrued from April 2, 2001, (when ARY made demand for return of its escrowed funds) until judgment was granted on May 29, 2002. In that same motion, ARY also requested postjudgment interest in an amount to be determined upon satisfaction of the May 29, 2002, judgment. Contained in ARY's motion was the understanding that it would also receive the interest which had actually accrued to date on the escrowed funds, so that all awarded interest would total that allowed under Kansas statutory rates.

On September 13, 2002, the district court filed a journal entry denying ARY's motion. The court held in relevant part:

"1. Plaintiff ARY Jewelers, L.L.C., and Defendant Scott Krigel, individually were represented by separate counsel throughout the negotiations that culminated

in the execution of the Escrow Agreements, entered into by them on November 21, 2000.

"2. Plaintiff ARY Jewelers, L.L.C., and Defendant Scott Krigel, trustee of the Scott W. Krigel Revocable Trust, were represented by separate counsel throughout the negotiations that culminated in the execution of the Escrow Agreements, entered into by them on November 21, 2000.

"3. Plaintiff ARY Jewelers, L.L.C., Defendant Scott Krigel, individually and Defendant Scott W. Krigel, trustee of the Scott W. Krigel Revocable Trust, are all sophisticated parties.

"4. Paragraph 5 of each Escrow Agreement provides that:

"Escrowee shall invest and as necessary reinvest the Escrowed Funds in interest bearing securities issued, guaranteed or secured by the United States or the Federal Deposit Insurance Corporation as directed by [Scott W. Krigel, individually or as trustee of the Scott W. Krigel Revocable Trust.]

"5. On June 5, 2002, the Court entered an order granting Plaintiff ARY Jewelers, L.L.C. the authority to direct the investment of the escrowed funds, as long as they remained invested in interest bearing securities issued, guaranteed or secured by the United States or the Federal Deposit Insurance Corporation.

"6. K.S.A. 16-201 and 16-204 are inapplicable because the parties agreed to the interest that would be earned on the escrowed funds, which is set forth in paragraph 5 of each Escrow Agreement.

"7. If it is determined that this Court lacked jurisdiction to hear this motion, then this is only an advisory opinion."

ARY timely appealed the district court's ruling.

ANALYSIS

The parties raise a multitude of arguments.

The Krigels claim that although this court held the SPA was null and void, the escrow agreements were not null and void because they represented agreements separate from the SPA, *i.e.*, were divisible. Accordingly, they argue that the district court was correct when it held the escrow agreements contained an interest rate agreed upon by the parties, *i.e.*, investment of the escrowed funds in Federal Deposit Insurance Corporation (FDIC) or United States government-backed interest-bearing securities. In the alternative, they argue that if the parties did not agree upon an interest rate, or if the escrow agreements are null and void, then Missouri statutory law supplies the rate for prejudgment interest (9% per Mo. Rev. Stat. § 408.020 [2000]) and that Kansas statutory law

supplies the rate for postjudgment interest (7.25% per K.S.A. 2001 Supp. 16-204[e]). See 20 Kan. Reg. 1113.

Krigels also make other arguments, several of which were not presented to the district court but are nevertheless claimed because "a district court's decision that reaches the right result will be upheld on appeal even though it relied upon the wrong ground or assigned erroneous reasons for its decision" (citing *National Inspection & Repair, Inc. v. Valley Forge Life Ins. Co.*, 274 Kan. 825, 56 P.3d 807 [2002]). Their ancillary arguments are: (1) Interest is not available in declaratory relief actions; (2) the awarding of prejudgment and postjudgment interest is discretionary with the district court; (3) the court did not have jurisdiction on the interest issue as ARY's motion was filed more than 10 days after the original journal entry of judgment was entered; and (4) the court did not have jurisdiction on the interest issue as ARY's motion was filed after the appeal had been docketed.

ARY responds that the escrow agreements are null and void as between ARY and Krigels, and thus their interest provisions cannot supplant ARY's statutory interest entitlement. Further, ARY claims that the law of both prejudgment and postjudgment interest is determined by the place of performance, which it argues is Missouri. Accordingly, while ARY agrees with Krigels' alternative argument that Missouri statutory law supplies the rate for prejudgment interest (9%), it argues that Missouri statutory law also supplies the rate for postjudgment interest (9% per. Mo. Rev. Stat. § 408.040 [2000]) and not Kansas' rate (7.25% per K.S.A. 2001 Supp. 16-204[e]). It further rejects the ancillary arguments raised by Krigels.

Resolution of many of these issues depends upon whether Missouri or Kansas law applies. This in turn depends upon whether these are questions of procedure or substance. For the procedural issues, Kansas law applies because suit was filed in a Kansas court; for the substantive issues, Missouri law applies. See *Vanier v. Ponsoldt*, 251 Kan. 88, 102-03, 833 P.2d 949 (1992); *Intern. Minerals & Chem. v. Avon Products*, 889 S.W.2d 111 (Mo. App. 1994).

Issue 1: *Did the district court have jurisdiction to address the interest issue?*

The Krigels first claim that ARY's motion for interest should have been denied because the district judge signed a journal entry resolving the substantive case on May 6, 2002, but ARY waited too long until June 10, 2002, to file its motion. The parties do not dispute that Kansas law applies to this issue: We agree because determining whether jurisdiction lies in a Kansas district court or instead in a Kansas appellate court must be governed by Kansas law. See *Vanier,* 251 Kan. 88; *Western Video Collectors v. Mercantile Bank,* 23 Kan. App. 2d 703, 705, 935 P.2d 237 (1997) (In conflict of laws situations, matters of procedure are usually considered to be subject to the law of the forum.).

As support, the Krigels argue that under K.S.A. 60-259(f), ARY should have filed its motion within 10 days of the signing of the court's journal entry and that ARY was simply too late.

Krigels' argument has no merit. Under K.S.A. 60-258, the effective date of a journal entry is when "signed by the trial judge and filed with the clerk of the court." The clerk of the court filed the first signed journal entry resolving the substantive case on May 29, 2002. Under K.S.A. 60-259(f), ARY had 10 days afterward to file a motion to alter or amend the judgment. K.S.A. 2001 Supp. 60-206(a) dictates that if the allocated period is 11 days or less, weekends and holidays are not counted when calculating the due date. ARY's motion, filed on June 10, 2002, was timely.

For the Krigels' second jurisdictional argument, they claim the district court should not have heard ARY's motion because their appeal had already been docketed in the Court of Appeals. On May 30, 2002, the day after the filing of the journal entry, Krigels filed their notice of appeal with the district court. On June 4, 2002, they docketed their appeal with the Clerk of the Appellate Courts. Six days later, on June 10, 2002, ARY timely filed its motion to alter or amend the substantive judgment.

This court has recognized: "A trial court does not have jurisdiction to modify a judgment after it has been appealed and the appeal docketed at the appellate level." *In re Estate of Robinson,* 232 Kan.

752, 754, 659 P.2d 172 (1983). However, instead of summarily remanding the interest issue—which is a meaningless exercise in light of paragraphs 6 and 7 of the district court's decision which resolved the issue on September 13, 2002, *i.e.*, the parties agreed to the rate at which interest would be earned on the escrowed funds—we will consider the interest issue out of judicial economy. *Cf. Martin v. Martin*, 5 Kan. App. 2d 670, 674-75, 623 P.2d 527, *rev. denied* 229 Kan. 670 (1981) (Even where district court lacks jurisdiction to rule on a motion for new trial under K.S.A. 60-260, the preferable procedure is for that court to consider the motion, if warranted, to prevent inefficient adjudication of the issue.).

Issue 2: *Did the district court correctly hold that the parties had contractually agreed to the interest rate on the escrowed funds?*

The district court correctly observed that paragraph 5 of the escrow agreements controlling the $1.45 million that ARY deposited for Scott's services and the $50,000 deposited for the stock purchase were essentially the same:

"Escrowee [Assured Quality Title] shall invest and as necessary reinvest the Escrowed Funds in interest bearing securities issued, guaranteed or secured by the United States or the Federal Deposit Insurance Corporation as directed by [Scott W. Krigel, individually or as trustee of the Scott W. Krigel Revocable Trust for the account of Krigel.]"

The district court construed these respective paragraph 5's as an agreement about the interest that would be earned on the escrowed funds and that K.S.A. 16-201 and K.S.A. 16-204 were therefore inapplicable.

K.S.A. 16-201 provides in relevant part: "Creditors shall be allowed to receive interest at the rate of ten percent per annum, *when no other rate of interest is agreed upon*, for any money after it becomes due." (Emphasis added.)

K.S.A. 2001 Supp. 16-204 provided:

"(d) Any judgment rendered by a court of this state on or after July 1, 1986, shall bear interest on and after the day on which the judgment is rendered at the rate provided by subsection (e).

"(e) (1) . . . on and after July 1, 1996, the rate of interest on judgments rendered by courts of this state pursuant to the code of civil procedure shall be at a rate per annum: . . . (B) which is equal to an amount that is four percentage

points above the discount rate (the charge on loans to depository institutions by the New York federal reserve bank as reported in the money rates column of the Wall Street Journal) as of July 1 preceding the date the judgment was rendered."

Although not specifically mentioned by the district court, when the parties do agree upon an interest rate, then that rate generally applies both prejudgment and postjudgment until payment is made in full. See K.S.A. 16-205(a). According to the district court, the agreed rate was that earned in interest-bearing securities backed by the U.S. government or the FDIC. On the other hand, if there is no agreement upon an interest rate, then the creditor may receive 10% prejudgment interest (K.S.A. 16-201), and, because of the date of this particular judgment, 7.25% postjudgment interest (K.S.A. 2001 Supp. 16-204).

We disagree with the district court's conclusion for several reasons, under both Kansas and Missouri law.

First, while it is true that the escrow agreements provided the funds could be invested in certain government-backed interest-bearing securities, these agreements were void and no longer in effect in early April 2001 when ARY demanded Krigels issue a joint written consent to Assured Quality Title to release the escrowed funds to ARY, and Krigels refused. Paragraph 4(c) of the SPA expressly states:

"(c) Within four weeks from the date hereof [December 19] Purchaser shall provide Seller with evidence of Foothill Capital's consent to the continued financing of Company's obligations to Foothill Capital. In the event Foothill Capital does not consent within the foregoing time period *this Stock Purchase Agreement and related agreements shall be void and of no further effect.*" (Emphasis added.)

In *ARY I*, we held the SPA was null and of no further effect as of December 19, 2000, because the financing condition failed. The escrow agreements are also null and of no further effect because they clearly are "related agreements." They not only were executed the same day as the SPA, but were also incorporated into the SPA: "attached and incorporated collectively herein as Exhibit 'A.' " They were also specifically referred to in the SPA (paragraph 2) and the consulting agreement (paragraphs 4 and 9). Moreover, the escrow agreements themselves mention the SPA and consulting agreement, referring to them as the "Related Documents."

Agreements that are null and of no effect cannot serve under either Missouri or Kansas law as the basis for an "agreed upon interest rate" as determined by the district court. See *Raynolds v. Row,* 184 Kan. 791, 794, 339 P.2d 358 (1959); *Nelson v. Marshall,* 869 S.W.2d 132, 134 (Mo. App. 1993). The district court erred in so holding.

Second, we also reject—under both Missouri and Kansas law—Krigels' argument that even if the SPA is null and of no effect, the escrow agreements are separate, independent agreements from the SPA and remain valid under the divisibility doctrine. Both jurisdictions recognize the doctrine which generally states that whether a contract is entire or divisible is a question of construction to be determined by the court according to the intention of the contracting parties as ascertained from the contract itself, upon a consideration of all the circumstances surrounding the making of it and the subject matter of the agreement. *Blakesley v. Johnson,* 227 Kan. 495, 500-01, 608 P.2d 908 (1980); *Grease Monkey Intern., Inc., v. Godat,* 916 S.W.2d 257, 261(Mo. App. 1995).

Here, SPA paragraph 4(c) expressly provides the intention of the parties: if the financing condition fails, the SPA and all related agreements are null and of no further effect. The parties' intention that the transaction was entire, *i.e.,* not divisible into parts, is also contained in other language of their documents. Paragraph 4 of the consulting agreement provides that the first of six equal monthly installment payments totaling $500,000 for Scott's consulting services is not due from escrow until the transfer of the company stock to ARY. Likewise, paragraph 9 of the consulting agreement provides that ARY shall not pay Scott the $950,000 from escrow for his covenant not to compete until the transfer of the company stock to ARY.

Moreover, if Scott's trust remained as the sole owner of the Krigel's, Inc., stock, there seems little reason for him to separately consult for, and agree not to compete against, a company owned by his trust for which he serves as trustee.

Finally, even if there were an agreed upon interest rate that remained in effect, it would not apply to the situation where, as here, the financing condition failed. Both the SPA and the con-

sulting agreement contain integration clauses that provide they constitute the "entire agreement." The documents, primarily the SPA and the consulting agreement, repeatedly state that the accrued interest will transfer with the principal in only two specific scenarios.

First, the principal and interest transfer to Krigels when the transaction closes. See SPA paragraph 1(b) ("The Purchase Price, plus accrued interest, shall be paid in cash to Seller on the Closing Date") and paragraph 2 ("Additionally, at closing, Scott's $950,000, plus accrued interest, shall be paid from escrow"); consulting agreement paragraph 4 (at the time of the final installment, Scott could "also withdraw all accrued interest on the $500,000") and paragraph 9 ("ARY shall pay Krigel the sum of $950,000, plus all accrued interest, upon the transfer of . . . stock to ARY.").

Second, the principal and interest transfer to Krigels when ARY defaults by not providing proof of its ability to pay unsecured creditors prior to Krigels, Inc.'s bankruptcy filing or by failing to pay the unsecured creditors on the effective date of the bankruptcy plan. See SPA paragraph 9 (upon default by ARY, Scott entitled to "all funds escrowed" per paragraphs 4 and 9 of the consulting agreement, *i.e.*, principal and interest, and his trust entitled to "all funds escrowed" per paragraph 1(b) of the SPA, *i.e.*, principal and interest). See also consulting agreement paragraph 19 (same).

In short, the escrow agreements contemplate—and therefore apply—only to successful demands for the escrowed funds by Krigels, not by ARY. Had either of the two scenarios occurred which would have provided Krigels a legitimate entitlement to the escrowed funds, then Krigels would have received the interest on those funds at the purported agreed upon rate. There is no agreement for interest, however, when the transaction did not close because of a failed financing condition.

Issue 3: *Is interest available in actions for declaratory relief?*

The Krigels claim that the district court was correct but, in the alternative, for the wrong reason, citing *National Inspection & Repair, Inc.*, 274 Kan. 825, Syl. ¶ 3 (A district court's decision that reaches the right result will be upheld on appeal even though it

relied upon the wrong ground or assigned erroneous reasons for its decision.). Specifically, they contend the statutory interest rates are inapplicable to this case because the judgment of the trial court was for declaratory relief only.

Krigels rely upon *Greenhaw v. Board of Johnson County Comm'rs*, 245 Kan. 67, 774 P.2d 956 (1989). This court in *Greenhaw* did not state the broad proposition that a declaratory judgment could not bear interest as a money judgment. We in fact affirmed the district court, which had awarded postjudgment interest on a declaratory judgment. 245 Kan. at 75.

Furthermore, we need not decide whether Kansas or Missouri law applies because interest in Missouri has been awarded on declaratory judgments when, as here, the right to money has been determined. *American Family Mut. Ins. Co. v. Nigl*, 123 S.W.3d 297, 301-02 (2003).

Krigels also cite two Ohio cases, *Jeppe v. Blue Cross*, 67 Ohio App. 2d 87, 425 N.E.2d 947 (1980), and *Johnson v. Burgins*, 103 Ohio App. 3d 584, 660 N.E.2d 525 (1995). This court in *Greenhaw* found *Jeppe* distinguishable and unpersuasive. 245 Kan. at 70. The *Jeppe* court affirmed a district court's denial of interest on a judgment because no money judgment of a definite amount was rendered. 67 Ohio App. 2d at 93. By contrast, in the instant case the judgment awarded control of a definite amount of money—$1.5 million. *Jeppe* therefore is not persuasive. Similarly, the issue in *Burgins* was whether the judgment was a money judgment which was definite in amount. *Burgins* therefore is also not persuasive.

Krigels finally cite *Pan American Petroleum Corporation v. Cities Service Gas Co.*, 191 Kan. 511, 382 P.2d 645 (1963), for the proposition that there is a difference between money judgments and judgments for only declaratory relief. While this may be true, the court in *Pan Am. Petroleum Corporation* never even mentions the application of judgment interest to this difference.

The declaratory judgment in the present case awarded control of a definite amount of money to ARY after ARY had been deprived of its use for over 1 year. Under those circumstances, interest is allowed under Kansas and Missouri law.

Issue 4: *What states' laws supply the rates for prejudgment and postjudgment interest?*

Now that we have determined there is no agreed upon interest rate, and that interest can accrue in declaratory relief actions, we examine what states' statutes supply the rates. Toward that end, neither the parties nor the court has found any cases from the Kansas appellate courts stating whether Kansas considers the issues of prejudgment interest and postjudgment interest to be matters of procedure or of substance.

## Postjudgment interest

We observe that the language of K.S.A. 2001 Supp. 16-204 certainly suggests that postjudgment interest is procedural:

"(d) *Any judgment rendered by a court of this state on or after July 1, 1986, shall bear interest on and after the day on which the judgment is rendered at the rate provided by subsection* (e).

"(e) (1) . . . on and after July 1, 1996, *the rate of interest on judgments rendered by courts of this state pursuant to the code of civil procedure shall be at a rate per annum:* . . . (B) which is equal to an amount that is four percentage points above the discount rate (the charge on loans to depository institutions by the New York federal reserve bank as reported in the money rates column of the Wall Street Journal) as of July 1 preceding the date the judgment was rendered." (Emphasis added.)

Furthermore, our own research has revealed no jurisdiction which considers postjudgment interest to be a question of substance. We find the rationale best summarized in *Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.,* 848 F.2d 613, 623 (5th Cir. 1988):

"Postjudgment interest has a substantive characteristic because the applicable rate of interest and rules of accrual can increase or decrease the amount of a monetary award. But postjudgment interest is better characterized as procedural because it confers no right in and of itself. Rather, it merely follows and operates on the substance of determined rights. Postjudgment interest is designed to compensate 'a successful plaintiff for the time between his entitlement to damages and the actual payment of those damages by the defendant.' "

We therefore hold that postjudgment interest is a question of procedure; accordingly, the law of Kansas—as the forum state—applies. Consequently, whether the parties' choice of law provision in the null SPA—paragraph 8(a), which applies to the SPA and all

"agreements referenced herein"—is also null, or whether it remains valid under the divisibility doctrine, is irrelevant, since such a provision, even if valid, does not displace Kansas procedural law. See *Western Video Collectors v. Mercantile Bank,* 23 Kan. App. 2d 703, 705-06, 935 P.2d 237 (1997).

As mentioned earlier in the opinion, we acknowledge that parties can agree upon a different rate of interest from the postjudgment rate fixed by statute. See K.S.A. 16-205(a); *Producers Equip. Sales, Inc., v. Thomason,* 15 Kan. App. 2d 393, 403-04, 808 P.2d 881 (1991). However, for several reasons we have held there is no valid agreed upon interest rate in the instant case. Accordingly, the appropriate rate of postjudgment interest under K.S.A. 2001 Supp. 60-204(e), given the date of the judgment in this case, is 7.25%. ARY is therefore entitled to postjudgment interest on its $1.5 million at the rate of 7.25% per annum from May 29, 2002 (the date of the filing of the journal entry of judgment) until paid in full. See K.S.A. 60-258.

Prejudgment interest

Determining whether prejudgment interest is a substantive or procedural issue is not as easily reached. Other jurisdictions are split, though the majority hold the issue is substantive. Annot., 78 A.L.R. 1046, 1048; *Cooper v. Ross & Roberts, Inc.,* 505 A.2d 1305, 1307 (Del. Super. 1986) (the majority view among states is that "prejudgment interest, like the issue of damages, is substantive, and the state whose laws govern the substantive legal questions also governs the question of prejudgment interest").

Missouri considers the issue substantive. *Intern. Minerals & Chem. v. Avon Products,* 889 S.W.2d 111 (Mo. App. 1994).

The federal district courts for Kansas conclude, or at least imply, that Kansas appellate courts would consider the issue to be substantive. See *Black & Veatch International Co. v. Foster Wheeler Energy Corp.,* 2002 WL 1934372 (D. Kan. 2002); *Burlington North & Santa Fe Ry. v. Kansas City Ry.,* 73 F. Supp. 2d 1274, 1283 (D. Kan. 1999); *Contract Lodging Corp. v. Union Pacific R.R.,* 1991 WL 278482 (D. Kan. 1991).

Both ARY and the Krigels (in the alternative) argue the issue is substantive, and that Missouri law would therefore apply. For the reasons presented below, we agree. Accordingly, as with the issue of postjudgment interest, whether the parties' choice of law provision in the null SPA—which also applies to the escrow agreements—is null and of no further effect, is irrelevant because here it is also redundant.

When addressing choice of law issues, Kansas appellate courts still follow the Restatement (First) of Conflict of Laws (1934). *Brenner v. Oppenheimer & Co.*, 273 Kan. 525, 538, 44 P.3d 364 (2002). Under the First Restatement of Conflict of Laws § 584: "The court at the forum determines according to its own Conflict of Laws rule whether a given question is one of substance or procedure."

*Burlington North & Santa Fe Ry. v. Kansas City Ry.*, 73 F. Supp. 2d 1274 is of guidance—more so than the other Kansas federal district court decisions on the specific issue of whether Kansas or another state's law governed the issue of prejudgment interest— because it looked to Kansas choice of law rules (the First Restatement).

The court stated:

"The court's research fails to reveal any Kansas authority resolving the issue as to what law governs the allowance of prejudgment interest as an element of damages for the breach of a contract where a conflict of laws is involved. Under Kansas choice of law rules, Kansas courts generally follow the First Restatement approach to resolving conflicts of law issues. See *Safeco Ins. Co. of America v. Allen*, 262 Kan. 811, 822, 941 P.2d 1365, 1372 (1997)(contracts actions); *Brown v. Kleen Kut Mfg. Co.*, 238 Kan. 642, 644, 714 P.2d 942, 944 (1986)(tort actions). Thus, the court looks to the First Restatement of Conflicts to determine whether Kansas or Missouri law governs the issue of prejudgment interest in this case.

"Section 418 of the Restatement of Conflicts, entitled 'Interest as Damages for Breach of Contract,' provides that '[t]he rate of interest allowed as part of the damages for the breach of a contract is determined by the law of the place of performance.' Restatement of Conflict of Laws § 418 (1934)." 73 F. Supp. 2d at 1283.

The contract in *Burlington Northern* was to be performed in Missouri, so the court held: "Thus, in light of the First Restatement of Conflicts' view that prejudgment interest is to be governed by

the law of the state where the contract is to be performed, the court concludes that Missouri law applies to the issue of prejudgment interest under the facts of this case." 73 F. Supp. 2d at 1283.

The court concluded that under Missouri statutory law, since no rate of interest was agreed upon, plaintiff was entitled to prejudgment interest at the rate of 9% per annum.

We agree with *Burlington Northern's* basic rationale and its specific holding under the First Restatement. We would add that when the First Restatement is used to determine whether prejudgment interest is a substantive or procedural issue, it lists a number of subjects under the "Procedure" heading, none of which includes prejudgment interest. Moreover, the subject of interest is listed under the "Damages" heading; § 418 (Interest as Damages for Breach of Contract) is linked with a clearly substantive issue, *i.e.*, § 413 ("Measure of Damages for Breach of Contract"). *Cf. McDaniel v. Sinn,* 194 Kan. 625, 626-627, 400 P.2d 1018 (1965) (Measure and amount of damages recoverable are questions of substantive law.).

Both the measure of damages for breach of contract, and the rate of interest allowed as part of those damages, are "determined by the law of the place of performance." (§§ 413, 418). We conclude that both are substantive issues. Likewise, while the *Burlington Northern* court did not address whether prejudgment interest was procedural or substantive, it can be inferred because the court used § 418—which directs us to examine the law of the place of performance rather than the law of the forum—that the court would have labeled prejudgment interest a substantive matter.

While no actual breach of a contract occurred in the instant case as in *Burlington Northern,* § 418, as applied by that court, most closely resembles our facts: interest is determined by the law of the place of performance. As § 355 of the First Restatement additionally provides: "The place of performance is the state where, either by specific provision or by interpretation of the language of the promise, the promise is to be performed." Here, the $1.5 million was deposited in two separate accounts with Assured Quality Title, an escrow agent based in Kansas City, Missouri. Additionally, the closing was to occur "at the offices of Berman, DeLeve, Kuchan

& Chapman, LC, or such other place . . . as the parties may agree." That firm's main office is located in Kansas City, Missouri. The place of performance was clearly in Missouri; therefore, Missouri law on prejudgment interest applies.

The plaintiff in *Burlington Northern* was entitled to 9% per annum prejudgment interest under Missouri statute. Mo. Rev. Stat. § 408.020 (2000) states in full:

"Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and for all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made."

Accordingly, ARY is entitled to interest on its $1.5 million at 9% per annum from April 2, 2001 (the date it made demand for return of its escrowed funds) until May 29, 2002 (the date of judgment).

Per ARY's offer contained in its briefs, Krigels are entitled to a setoff of (1) all amounts actually accrued on the escrowed funds via government-backed interest-bearing securities (2) against the interest to which ARY is entitled—both prejudgment (9%) and postjudgment (7.25%)—until paid in full by Krigels. See also *Dillon v. Montgomery*, 138 Idaho 614, 67 P.3d 93 (2003) (affirmed trial court's granting of prejudgment interest on an interest-bearing escrow account pursuant to statute akin to Missouri's and offsetting that amount by the interest accrued in the account).

Issue 5: *Is the awarding of interest discretionary with the district court?*

Finally, and as another reason why the district court was correct but for the wrong reason, Krigels claim it was within the district court's discretion to deny ARY's request for prejudgment and postjudgment interest, and the court did not abuse that discretion. It cites, among others, *Bigs v. City of Wichita*, 271 Kan. 455, 480, 23 P.3d 855 (2001).

There is no need to determine whether Missouri or Kansas law

applies to this issue because Krigels simply misunderstand the district court's ruling. It did not deny ARY interest.

The district court held: "K.S.A. 16-201 and K.S.A. 16-204 are inapplicable because the parties agreed to the interest that would be earned on the escrowed funds, which is set forth in paragraph 5 of each Escrow Agreement." As mentioned earlier in the opinion, K.S.A. 16-201 provides in relevant part: "Creditors shall be allowed to receive interest at the rate of ten percent per annum, *when no other rate of interest is agreed upon,* for any money after it becomes due." (Emphasis added.)

Consequently, the statute recognizes that parties may agree upon the interest rate that would apply to monies due and owing. The statute also provides that if the parties do not so agree, then the statute will provide that interest rate for them: 10%. Similarly, while K.S.A. 2001 Supp. 16-204 provides a postjudgment rate—under our facts, 7.25%—the parties can agree on a different rate. See K.S.A. 16-205(a); *Producers Equip. Sales, Inc.,* 15 Kan. App. 2d at 403-04.

Accordingly, whether the parties agree on a rate of interest, or whether a statute provides it for them, the salient point is the court has approved it per the statute, *i.e.,* granted the imposition of interest. Thus, when the district judge in this case ruled that the parties had agreed upon the interest rate, he essentially was authorizing its use as recognized in the statutes. He was not, contrary to Krigels' argument, denying interest, but rather approving both prejudgment and postjudgment interest. In short, we cannot consider any argument that the denial of interest was within the court's discretion because there was no denial.

While we hold the district court correctly authorized prejudgment and postjudgment interest, as stated earlier in the opinion, it essentially authorized the wrong rates. Accordingly, we reverse and remand for a district court determination of the correct amounts due and owing ARY consistent with the direction provided in the opinion.

Reversed and remanded.

ABBOTT, J., not participating.

BRAZIL, S.J., assigned.