No. 127,532

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
LORINE H. MUELLER.

SYLLABUS BY THE COURT

1.

A debt owed by a person entitled to share in an estate may be set off against that person's distributive share of the estate even if collection of that debt under the law may be barred by statute or the parties' contract.

2.

Courts are not compelled to give effect to a choice-of-law clause if the law the parties have chosen contravenes the settled public policy of this state.

Appeal from Sedgwick District Court; ROBB RUMSEY, judge. Oral argument held March 11, 2025. Opinion filed June 6, 2025. Reversed and remanded with directions.

*Michael Jilka*, of Graves & Jilka, P.C., of Lawrence, and *Donald N. Peterson*, of Graybill & Hazlewood, LLC, of Wichita, for appellants Gary Mueller and Margo Loop.

*Clark J. Grant*, pro hac vice, of Columbus, Nebraska, and *Marc A. Powell*, of Powell Law Office, of Wichita, for appellee Cheryl Mueller.

Before ISHERWOOD, P.J., BRUNS and GARDNER, JJ.

GARDNER, J.:  Lorine H. Mueller died testate as a Kansas resident in 2017. Her will, executed in Nebraska and devising properties located in Kansas and Nebraska, was admitted to probate in Kansas. After years of litigation, her children, Margo Loop and

1

Gary Mueller (collectively, Appellants), petitioned the district court to set off $340,846.52 against daughter-in-law Cheryl Mueller's share of the estate. That amount was based on a confessed judgment that Cheryl had signed in 2016. Cheryl challenged the claim in Kansas and in ancillary proceedings in Nebraska, arguing the confessed judgment was uncollectible because of a settlement agreement between the parties. The Kansas district court eventually denied the setoff. Appellants contend that the district court should have applied Kansas law to this issue but seemingly applied Nebraska law. Agreeing, we reverse and remand, finding setoff required under Kansas law.

FACTUAL AND PROCEDURAL BACKGROUND

Lorine H. Mueller died testate in Wichita, Kansas, in February 2017. Lorine had been married to Casper Mueller, and they had three children: Randy Mueller, Gary Mueller, and Margo Loop. Randy married Cheryl Mueller and had two children. Later, Casper and Randy died, so by the time of Lorine's death, her remaining heirs included Gary, Margo, Cheryl, and Cheryl's two children.

Lorine prepared three wills during her lifetime: in 1979, 2006, and 2007. The first will divided her estate assets in equal shares to her three children. Lorine then moved from Kansas in 2003 to Nebraska to live with Cheryl in a farmhouse owned by a company in which Lorine owned stock, Mue-Cow Farms, Inc.—a company incorporated by Casper in 1982. After living with Cheryl and Cheryl's children for a few years, Lorine executed her second will. This 2006 will added Cheryl as a beneficiary and granted her authority as Lorine's attorney-in-fact by a durable power of attorney.

In 2007, Gary and Margo initiated conservatorship proceedings against Lorine in Nebraska. But they dismissed their petition after Lorine completed a mini-mental status examination. Shortly after the dismissal, Lorine executed her third and final will. This 2007 will devised most of Lorine's estate to Cheryl, including: (1) all of Lorine's personal

2

property and effects located in her home and cabin; (2) all farm machinery, equipment, tools, and livestock; (3) all stock in Mue-Cow Farms, Inc., and real estate owned by the company; (4) Lorine's cabin; and (5) an exclusive option to buy Lorine's real estate at a reduced price. Finally, Lorine's residuary estate would go to Appellants and Cheryl in equal shares.

In 2014, Margo initiated another guardianship/conservatorship action. This eventually led to her appointment as Lorine's guardian and conservator. Margo moved Lorine to live with her in Kansas, where Lorine spent the remainder of her life.

Margo, on Lorine's behalf, sued Cheryl in Nebraska in 2015 for fraud, unjust enrichment, negligence, conversion, and breach of fiduciary duty ("the fraud action"). Mue-Cow Farms, Inc., sued Cheryl the same year, seeking forcible entry and detainer of the house where Cheryl and her children resided. Cheryl was also involved in a lawsuit filed against her deceased husband's estate, as the estate's representative, around the same time.

As a part of the Settlement Agreement to resolve all these claims, Cheryl confessed judgment in the fraud action in the amount of $340,846.52. In the Settlement Agreement, the parties expressly denied liability and indebtedness: "This Agreement represents the settlement of disputed claims, and is not an admission of liability, wrongdoing, or indebtedness by any party. In fact and in law, the parties expressly deny any such liability, wrongdoing or indebtedness." The parties negotiated several terms related to each of the then pending lawsuits. Relevant to the fraud action, the Settlement Agreement provided: "Margo, and Lorine's estate shall not seek to collect the Confession of Judgment. The Confession of Judgment shall not be forgiven." The Settlement Agreement also included a choice-of-law provision favoring Nebraska law.

After Lorine's death in 2017, Margo petitioned to probate Lorine's 1979 will in the Sedgwick County District Court. But Lorine's personal representative in Nebraska petitioned a Nebraska court to probate Lorine's 2007 will. Following a bench trial, the Nebraska court determined that jurisdiction and venue were proper in Sedgwick County, Kansas, because Lorine died domiciled in Kansas. The Sedgwick County District Court later determined that the 2007 will was enforceable and thus admitted that will to probate. Margo appealed the decision, but this court affirmed the order probating the 2007 will in *In re Estate of Mueller*, No. 119,358, 2019 WL 2554344, at *13 (Kan. App. 2019) (unpublished opinion). The 2007 will included a choice-of-law provision, stating "[w]ithout regard to my domicile at my death, Nebraska law shall govern the rights of all persons interested in my estate."

After proceedings resumed in the district court, Appellants filed petitions to determine whether the amount of the confessed judgment could be set off against Cheryl's distributive share of the estate. Gary's petition in support of setoff relied on our Supreme Court's opinion in *In re Estate of Wernet*, 226 Kan. 97, 108, 596 P.2d 137 (1979), which found an heir's indebtedness to an estate was not canceled although suit to recover the debt was barred by the statute of limitations. The petition thus argued that although the Settlement Agreement here precluded collection from Cheryl of the confessed judgment, it also specified that the judgment was not forgiven so the debt was still owed, requiring an offset of Cheryl's distributive share. Cheryl opposed Appellants' petitions.

After a hearing in the Kansas setoff case, the district court made a preliminary holding that it had "authority to set off the amount of the confession of judgment plus accrued interest against [Cheryl's] distributive share of the estate." But the district court stayed its enforcement of that judgment pending resolution of Cheryl's Nebraska litigation—Cheryl had filed two related lawsuits in Nebraska: a declaratory judgment action and an action to vacate the confessed judgment.

4

Cheryl's first action in Nebraska sought to vacate the confessed judgment, arguing the Appellants had violated the Settlement Agreement by pursuing setoff and had procured the confessed judgment by fraud. The Nebraska district court dismissed this action, finding that over two years had passed before Cheryl had filed it, so the statute of limitations had run. The Nebraska Court of Appeals affirmed, finding the fraud exception to the two-year statute of limitations inapplicable. *Loop v. Mueller*, 30 Neb. App. 300, 312, 314, 967 N.W.2d 749 (2021).

Cheryl's second Nebraska suit was a declaratory judgment action that sought to bar Appellants from pursuing setoff of the confessed judgment based on the terms of the Settlement Agreement. Yet the Nebraska district court entered summary judgment for Appellants, finding it lacked jurisdiction over matters related to the distribution of Lorine's estate. On appeal, the Nebraska Supreme Court found the case should have been dismissed, but affirmed the ruling that jurisdiction was lacking. *Mueller v. Peetz*, 313 Neb. 173, 179, 185-86, 983 N.W.2d 503 (2023). It found the district court should have declined to exercise jurisdiction, under declaratory judgment abstention principles, over the Nebraska action as it related to the possibility of setoff in pending probate proceedings in Kansas. 313 Neb. at 181.

After her two unsuccessful Nebraska lawsuits, Cheryl moved the Kansas district court to reconsider its stayed ruling. The district court held another hearing but affirmed its earlier decision finding that under *Wernet*, the amount of Cheryl's confessed judgment and any accrued interest would be set off against her distributive share of Lorine's estate.

In January 2023, Cheryl initiated ancillary probate proceedings in Platte County, Nebraska, seeking distribution of the "Nebraska assets." According to Cheryl's petition, these assets included Lorine's 100% ownership in the stock of Mue-Cow Farms, Inc., which owned around 17 acres of land in Nebraska; a cabin and lease; a 15-acre parcel of land; and the option to purchase real property inherited by Appellants.

5

The Platte County Court ruled that it had jurisdiction over the Nebraska realty—the 15-acre property and the cabin—and ordered those items be distributed to Cheryl. But the court denied Cheryl's claims regarding Mue-Cow Farms, Inc., stock, the lease, and the option to purchase real estate, finding those assets were being distributed by the Kansas district court. And based on its application of a Nebraska statute, Neb. Rev. Stat. § 30-24,101, the Nebraska district court determined that the parties' Settlement Agreement acted as a defense to both the collection and the setoff of the confessed judgment.

In the wake of her victory in the Nebraska ancillary probate ruling, Cheryl filed another motion in the Kansas district court, asking the court to reverse its prior ruling on setoff. She also petitioned for $89,991 in credit for money she purportedly paid for labor, supplies, and repairs to estate property.

The Kansas district court held a hearing and ordered the parties to submit proposed findings of fact and conclusions of law. The district court took the matter under advisement, reversed its previous ruling, and denied Appellants' setoff claim. The district court did not, however, explain which law it used in doing so. The ruling states "[u]nder the facts of this case and in light of the agreement of the parties and the ruling from the Nebraska Court the request to set off the Judgment of $340,846.52 against Cheryl Mueller's distributive share is denied." The district court also denied Cheryl's request for reimbursement, finding Cheryl was not credible and had provided insufficient evidence for her claim.

Appellants timely appeal the district court's ruling on setoff.

DID THE DISTRICT COURT ERR BY NOT OFFSETTING A DEBT THAT CHERYL ALLEGEDLY OWED LORINE'S ESTATE AGAINST CHERYL'S SHARE OF THE ESTATE'S ASSETS?

Appellants argue that the district court improperly applied Nebraska law by refusing to order a setoff of the confessed judgment. For the most part, the parties agree that the district court could order a setoff based off the amount of the confessed judgment under Kansas law but not under Nebraska law. Appellants maintain that the district court should have applied Kansas procedural law to determine this issue. And under Kansas law—particularly, the holding in *Wernet*—setoff was required because even if Cheryl could show that the debt was not collectible, the $340,000 judgment should have been treated as estate assets already in Cheryl's possession. See *In re Estate of Wernet*, 226 Kan. at 108 (finding when addressing setoff in probate matters, the statute of limitations "does not extinguish an obligation nor satisfy a debt"; instead, it is a statute of repose which "simply bars the remedy and prevents the use of the obligation or debt as a[n] . . . affirmative defense").

Cheryl counters that the district court had to follow the specific terms of the Settlement Agreement and Lorine's will to decide this dispute, and both have choice-of-law provisions specifying that Nebraska law governs any disputes related to the documents. Cheryl notes that Kansas courts generally enforce choice-of-law provisions in contract disputes and argues that the central issue here raises a contractual question. She also emphasizes that wills must be construed according to the intent of the decedent, so Nebraska law controls the setoff issue. Alternatively, Cheryl argues that *Wernet* is distinguishable so setoff is precluded under either state's laws.

*Standard of Review and Basic Legal Principles*

An appellate court exercises unlimited review over the interpretation and legal effect of written instruments and is not bound by the lower court's interpretations or

rulings. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018). Similarly, if the relevant facts before the district court were undisputed, legal effects of the undisputed facts may be resolved by the appellate court de novo. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 310 Kan. 644, 650, 448 P.3d 383 (2019); see also *Simpson v. City of Topeka*, 53 Kan. App. 2d 61, 68, 383 P.3d 165 (2016) (whether a party has defaulted on a contractual obligation is reviewed de novo if the relevant facts are undisputed).

*District Court's Rationale*

The district court did not provide a legal basis for its decision that no offset applied to Cheryl's distributive share of Lorine's estate, but it does not appear that the district court applied a conflict-of-laws analysis to decide that claim. The district court seemingly based its conclusion on the parties' choice-of-law clause in the Settlement Agreement, and the Nebraska district court's opinion which relied on Neb. Rev. Stat. § 30-24,101.

Appellants argue the district court's order had the effect of applying a Nebraska probate statute that does not apply in Kansas probate law. They also suggest that the district court legally erred by giving full faith and credit to the Nebraska court's decision, citing *Torian's Estate v. Smith*, 263 Ark. 304, 564 S.W.2d 521 (1978). There, the Arkansas Supreme Court refused to extend full faith and credit to a Mississippi probate order, finding Arkansas had sole jurisdiction over the Arkansas assets of the estate, thus the Mississippi judgment was entitled to full faith and credit in Arkansas only to the extent that it concerned property in Mississippi. 263 Ark. at 311-13.

Assuming the district court adopted the Nebraska district court's ruling, as Appellants allege, we agree that the decision appears to be legally flawed. See *In re Estate of Reed*, 233 Kan. 531, 535-40, 664 P.2d 824 (1983) (refusing to grant full faith

and credit to the admission of a will executed in Indiana to probate by Indiana court as a foreign will in part because Indiana lacked jurisdiction over will of decedent, who died a Kansas resident and owned property only in Kansas); see also Restatement (First) of Conflict of Laws § 376 (1934) ("A state can bar only within the state a claim which belonged to a deceased person.").

Lorine died domiciled in Kansas and her will devises properties (movables) located in Kansas. So Kansas law, particularly the Kansas Probate Code, governs these proceedings. The Kansas Probate Code, K.S.A. 59-102 et seq., provides that probate matters are initiated in the district court, with venue determined under K.S.A. 59-2203 for probate or administration actions. *Quinlan v. Leech*, 5 Kan. App. 2d 706, 709, 623 P.2d 1365 (1981); see K.S.A. 59-2203 (requiring proceedings for probate of a will to be held in the county of the residence of the decedent at the time of their death); *In re Estate of DeLano*, 181 Kan. 729, 741, 315 P.2d 611 (1957) (acknowledging Kansas courts have jurisdiction over probate matters involving resident decedents and Kansas properties); *In re Estate of Troemper*, 160 Kan. 464, 471, 163 P.2d 379 (1945) ("It is elementary that rights of inheritance in real estate are determined by the law of the situs.").

Still, even assuming error, we cannot reverse on this basis, as the district court may have been right for the wrong reason. See *State v. Williams*, 311 Kan. 88, 91, 456 P.3d 540 (2020). We thus consider whether a conflict-of-laws analysis yields that same result. Resolution of a conflict-of-laws issue involves a question of law over which we exercise unlimited review. *M & I Marshall & Ilsley Bank v. Higdon*, 319 Kan. 572, 576, 556 P.3d 498 (2024).

*A Conflict Exists Between Kansas and Nebraska Laws*

Generally, Kansas courts begin with the presumption that Kansas law governs an estate claim. The party asserting the law of a different state applies to a certain issue must

show that there is a meaningful conflict between that state's law and Kansas law. See *AT&SF Ry. Co. v. Stonewall Ins. Co.*, 275 Kan. 698, 762, 71 P.3d 1097 (2003) (concluding that no choice-of-law issue arose when Kansas and Illinois law were not in conflict); see also *Rogers v. Wells Fargo Bank, N.A.*, 64 Kan. App. 2d 290, 307, 551 P.3d 142 (2024) (noting these basic principles for the district court's consideration of estate assets on remand).

We agree with the parties that whether a setoff could be ordered raises a conflict-of-laws issue here. Cheryl shows that her debt, as defined by the confessed judgment, is treated differently under Nebraska law than under Kansas law. In Kansas, the debt may be set off against Cheryl's distributive share of the estate regardless of a valid procedural defense to collection of the debt. See *In re Estate of Wernet*, 226 Kan. at 108. But in Nebraska, a defense, such as the statute of limitations, that would be available in direct, non-probate proceedings to recover the debt may preclude setoff under Neb. Rev. Stat. § 30-24,101:

> "Unless a different intention is indicated by the will, the amount of a noncontingent indebtedness of a successor to the estate if due, or its present value if not due, shall be offset against the successor's interest; but the successor has the benefit of any defense which would be available to him in a direct proceeding for recovery of the debt."

Cheryl claims that the Settlement Agreement provides a defense that would prevent the estate's recovery of the debt in a direct proceeding, thus her debt would not be set off under Nebraska law. Appellants claim that the Settlement Agreement would not prevent the estate's offset of the debt under Kansas law. Thus, under Nebraska law, setoff may be defeated by a defense not permitted under Kansas caselaw. We thus find that a conflict-of-laws analysis is required.

10

*Substantive v. Procedural Issues*

Our Supreme Court recently outlined in *Higdon* the basic legal principles applicable in choice-of-law matters. That case reemphasizes the well-settled principle that our appellate courts generally follow the Restatement (First) of Conflict of Laws (1934), which requires an initial determination of whether the issue presented is substantive or procedural.

Nebraska courts generally follow the Restatement (Second) of Conflict of Laws, but that restatement requires the same initial distinction between substantive or procedural issues. See *Whitten v. Whitten*, 250 Neb. 210, 212, 548 N.W.2d 338 (1996) ("Although substantive rights of parties to an action are governed by the state where the cause of action arose, procedural matters are dictated by the law of the forum."); see also *Johnson v. U.S. Fid. and Guar. Co.*, 269 Neb. 731, 735-36, 696 N.W.2d 431 (2005). "For the procedural issues, Kansas law applies because suit was filed in a Kansas court." *ARY Jewelers v. Krigel*, 277 Kan. 464, 472, 85 P.3d 1151 (2004).

The *Higdon* court cautioned that "[t]he line between substance and procedure is not always clear," so it set out the relevant definitions:

> "Substantive law is '[t]he part of the law that creates, defines, and regulates the rights, duties, and powers of parties.' Black's Law Dictionary 1729 (11th ed. 2019). On the other hand, procedural law is '[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves.' Black's Law Dictionary 1457 (11th ed. 2019); see Restatement (First) of Conflict of Laws § 585, comment a ('Matters of procedure include access to courts, the conditions of maintaining or barring action, the form of proceedings in court, the method of proving a claim, the method of dealing with foreign law, and proceedings after judgment.')." 319 Kan. at 577.

11

The critical step in determining whether an issue is substantive or procedural is to correctly identify the actual conflict at issue. See *Higdon*, 319 Kan. at 580-81, 584 (finding the "the actual conflict at issue" for treatment of a bank account was neither contractual nor based in garnishment procedure, but required identification of the property interest; this raised a substantive question governed by Missouri law although Kansas law governed the garnishment procedure).

The cause of action here, somewhat like the garnishment cause of action in *Higdon*, relates to both probate procedure and contract law. The actual conflict is whether the confessed judgment provides sufficient proof that Cheryl owes a debt to the estate. If a debt is found, we then determine how the debt affects the distribution of Lorine's estate.

> *Nebraska substantive law determines whether Cheryl has a debt to the estate.*

Whether a debt exists under these circumstances raises a primarily contractual question. For the resolution of contract conflicts, the Nebraska Supreme Court has adopted the Restatement (Second) of Conflict of Laws § 188 (1971). *Johnson*, 269 Neb. at 743. Yet Cheryl does not attempt to show which state has the most significant relationship to the transaction and the parties under the general choice-of-law principles stated in that Restatement, as section 188 requires. See also Restatement (Second) of Conflict of Laws § 6(2) (providing seven relevant factors to consider when no statutory provision directs a court's choice-of-law decision). And "appellate courts do not make factual findings, even if the record is sufficient for the court to reach the factual issues. Fact-finding is simply not the role of appellate courts." *State v. Nelson*, 291 Kan. 475, 488, 243 P.3d 343 (2010).

But the parties do not challenge the validity of the Settlement Agreement or the Confession of Judgment. And Cheryl does not show that Nebraska law is different than

12

Kansas law in interpreting the plain language of those documents. Nor does she cite any Nebraska authority suggesting that its probate offset statute means her debt no longer exists.

Instead, Cheryl argues that Nebraska law controls this issue because the parties included a Nebraska choice-of-law provision in the Settlement Agreement and Lorine did the same in her will. As to the Settlement Agreement, she cites *Brenner v. Oppenheimer & Co.*, 273 Kan. 525, 540, 44 P.3d 364 (2002), and argues that unless contrary to public policy, a choice-of-law provision in a contract generally controls disputes stemming from a contract.

We agree that we should construe the Settlement Agreement according to Nebraska contract law when considering the nature of the obligation created by the confessed judgment—whether the debt existed. But *Brenner* does not support Cheryl's request to apply Nebraska law to determine the appropriate procedure for distributing debts owed to the estate. The Settlement Agreement does not specifically address setoff, so it does not show any express agreement by the parties about any right of setoff. Nor does the agreement resolve all aspects of the parties' interests in Lorine's estate. And even when valid, "the parties' choice of law provision . . . does not displace Kansas procedural law." See *ARY Jewelers*, 277 Kan. at 479-80 (finding postjudgment interest procedural so the law of Kansas—as the forum state—applies). Consequently, the parties' choice-of-law provision in the contract is "irrelevant." See 277 Kan. at 479-80; *Western Video Collectors v. Mercantile Bank*, 23 Kan. App. 2d 703, 705-06, 935 P.2d 237 (1997) (holding that "unless the parties expressly agree to apply the statute of limitations of another state, general choice of law provisions in contracts incorporate only substantive law and do not displace the procedural law of the forum state").

Cheryl also relies on the choice-of-law provision in Lorine's will, which states: "Without regard to my domicile at my death, Nebraska law shall govern the rights of all

13

persons interested in my estate." Cheryl argues this provision establishes a clear intent by Lorine to distribute her estate according to Nebraska laws. She relies on the Restatement (Second) of Conflict of Laws § 240, comment e, which focuses on the testator's intent:

> "The forum will give effect to a provision in a will that it should be construed in accordance with the rules of construction of a particular state. It is not necessary that this state have a substantial connection with the testator or with the land. This is because construction is a process for giving meaning to a will in areas where the intentions of the testator would have been followed if these intentions had been made clear."

But Kansas courts generally follow the First rather than Second Restatement on conflict-of-laws issues. See *Higdon*, 319 Kan. at 577 (noting this and finding our Supreme Court "has not signaled that it intends to abandon the First Restatement"). And the First Restatement does not favor Cheryl's position. It provides that "[i]f after making his will, a person changes his domicil, the validity of his will is determined by the law of the state of his domicil at death, not of his domicil at the time of executing the will." Restatement (First) of Conflict of Laws § 306, comment d; see also Restatement (First) of Conflict of Laws § 306, comment e (When "a will disposes of both land and movables, the validity of devises of land is determined by the law of the state where the land is; the validity of bequests of movables is determined by the law of the state in which the testator died domiciled."). Lorine was domiciled in Kansas when she died. Lorine's choice of law does not trump Kansas procedural law. See *ARY Jewelers*, 277 Kan. 464, Syl. ¶ 9; see also Restatement (First) of Conflict of Laws § 306, comment f (will "governed by the law of the state of domicil of the testator in spite of a direction in the will to convert personalty into land").

Cheryl does not dispute that she has a debt to Lorine's estate. To the contrary, her brief repeatedly acknowledges her "debt" yet contends the estate cannot collect or offset it. Cheryl's confession of judgment reflects a debt to Lorine's estate. A confession of judgment is merely the acknowledgment of an indebtedness, which is founded on an

14

obligation imposed by the law. *Lessee of Livingston v. Moore and others*, 32 U.S. 469, 550, 8 L. Ed. 751 (1833). It is "'in effect a private admission to liability for a debt without trial, upon which a court places its imprimatur when submitted to the clerk for entry.' [Citation omitted.]" *Nationwide Ins. Co. of America v. Tipton*, 91 Cal. App. 5th 1355, 1363, 308 Cal. Rptr. 3d 881, *rev. denied* (2023). Thus, the general nature of a confession of judgment evidences a debt.

Cheryl shows us no Nebraska law to the contrary. Nebraska law expressly permits confessions of judgment. See Neb. Rev. Stat. § 25-901 (governing offers to confess judgment before trial). And it recognizes that a confession of judgment evidences a debt. See *Thornhill v. Hargreaves*, 76 Neb. 582, 107 N.W. 847, 847 (1906). Under Nebraska law a confession of judgment "operate[s] as a release of errors." Neb. Rev. Stat. § 25-1311. Yet Nebraska caselaw suggests that a party's debt still exists even if an action for its payment is barred by the statute of limitations. See *Castellano v. Bitkower*, 216 Neb. 806, 812, 346 N.W.2d 249 (1984) (part payment can result in a debtor's waiver or relinquishment of the defense afforded by the statute of limitations); *In re Estate of Knickman*, No. A-13-405, 2014 WL 1775885, at *4 (Neb. Ct. App. 2014) (unpublished opinion) (same). In that circumstance, the lapse of time does not extinguish an obligation nor satisfy a debt, but the statute simply bars the remedy and prevents the use of the obligation or debt as a cause of action or affirmative defense.

Cheryl does not rely on the statute of limitations, but on the parties' Settlement Agreement. Yet nothing in the language of Cheryl's Confession of Judgment or her Settlement Agreement shows that she has no debt to Lorine's estate. True, the Settlement Agreement said, "Margo, and Lorine's estate shall not seek to collect the Confession of Judgment. The Confession of Judgment shall not be forgiven." But these two sentences are neither contradictory nor ambiguous. The first sentence states that the estate shall not try to collect the $340,846.52, and the second states that the $340,846.52 is not forgiven. Both sentences tacitly recognize that the debt in the stated amount exists and remains

15

outstanding. A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Facilities Cost v. Otoe County School*, 291 Neb. 642, 652, 868 N.W.2d 67 (2015). The Settlement Agreement thus neither extinguishes Cheryl's obligation nor satisfies her debt, but simply bars the estate from basing a cause of action or affirmative defense on that debt. Cheryl's debt in the amount of the Confession of Judgment still exists although the estate's remedy of collecting it is barred by the Settlement Agreement.

But nothing in the Settlement Agreement's language precludes an offset by the estate. If the Settlement Agreement had stated "the Confession of Judgment shall be forgiven," then offsetting the $340,846.52 against Cheryl's distributive share would likely breach the terms of that agreement. Such language would require the parties to overlook the debt or consider it as already satisfied or as if it had never been owed. But the contrary plain language of the Settlement Agreement compels the opposite conclusion. By stating "[t]he Confession of Judgment shall not be forgiven," the parties agreed that Cheryl's debt, although it could not be collected by the estate, remained outstanding, unpaid, and unforgiven.

We recall Cheryl's earlier assertion that she had agreed to the confession of judgment because she had been misled to believe it would benefit Lorine's tax obligations. See *In re Estate of Mueller*, 2019 WL 2554344, at *3; *Loop*, 30 Neb. App. at 312. But extrinsic evidence is not permitted to explain the terms of an unambiguous contract. *Gary's Implement, Inc. v. Bridgeport Tractor Parts, Inc.*, 270 Neb. 286, 313, 702 N.W.2d 355 (2005) (Gerrard, J., dissenting). "When a contract is unambiguous, the intentions of the parties must be determined from the contract itself." *Facilities Cost*, 291 Neb. at 656.

The facts show no effort by Lorine's estate to collect the Confession of Judgment. The estate has not sought affirmative relief to have Cheryl pay $340,846.52 into the

16

estate. Nor has it filed a cause of action or employed a process or engaged in an act to recover from Cheryl the amount of her debt. See *Davis v. Tajchman*, No. 69,461, 1994 WL 17120190, at *1 (Kan. App. 1994) (unpublished opinion) (estate petitioned to recover $695.68 allegedly still due on a written promise to pay $1,000).

Cheryl contends that the estate is now trying to collect the Confession of Judgment by offsetting its amount against her distributive share. Yet she shows us no Nebraska law supporting her claim that an offset in probate is in essence a collections action. We find an offset to be different in kind than an action to collect a debt. The "'equitable concept of "offset" recognizes that the debtor may satisfy a creditor's claim by acquiring a claim that serves to counterbalance or to compensate for the creditor's claim.'" Offset, Black's Law Dictionary 1306 (12th ed. 2024). Nebraska courts consider setoff an equitable remedy. See *Stanton v. Stanton*, 134 Neb. 660, 279 N.W. 336, 338 (1938) (finding right of retainer by estate administrator of heir's indebtedness rests on broad principles of equity); *First Trust Co. of Lincoln v. Cornell*, 114 Neb. 126, 206 N.W. 749, 749-50 (1925) (same).

An action to collect is a direct proceeding for recovery of the debt, an affirmative act that could be barred by the statute of limitations, while an offset would not be barred. See, e.g., *Matter of Estate of Owen*, 11 Wash. App. 2d 1049, 2019 WL 6876791, at *4 (2019) (unpublished opinion) (even if the estate could not collect on the debt, it was free to offset the brothers' share of the estate by the amount of the debt established at trial). Setoff is an equitable remedy, which is inconsistent with an action to recover an amount due and unpaid on a contract. *In re Estate of Heiman*, 44 Kan. App. 2d 764, 772, 241 P.3d 161 (2010).

We note that the Settlement Agreement, in a provision titled "Will Contest," preserves Margo's right to challenge any actions in Lorine's estate proceeding: "For purposes of clarification, Margo is not waiving or relinquishing any rights to file a will contest action, a challenge to a personal representative or any actions in any estate

17

proceeding of Lorine after her passing." During appellate review, a court "must examine and consider the writing as a whole in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Coral Production Corp. v. Central Resources, Inc.*, 273 Neb. 379, 391, 730 N.W.2d 357 (2007). The court presumes the parties intended every clause in the contract to have "some effect." 273 Neb. at 391. And "[n]o single provision . . . will be given controlling effect." 273 Neb. at 391-92. By this language Margo preserved the right to offset the amount of the Confession of Judgment from Cheryl's distributive share of Lorine's estate.

We thus find that under Nebraska law, Cheryl has an outstanding debt to the estate in the amount stated in her Confession of Judgment, although that debt cannot be collected by the estate without likely breaching the Settlement Agreement.

> *Kansas law determines the procedural issue of how to treat Cheryl's debt in estate distribution.*

The final matter—determining how Cheryl's debt should be treated in the distribution of Lorine's estate assets—is a procedural matter. See Black's Law Dictionary 1459 (12th ed. 2024) (Procedural law is "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves."); Restatement (First) of Conflict of Laws § 585, comment a ("Matters of procedure include access to courts, the conditions of maintaining or barring action, the form of proceedings in court, the method of proving a claim, the method of dealing with foreign law, and proceedings after judgment."). Although we have determined Cheryl's indebtedness according to Nebraska contract law, Kansas procedural law governs the way her indebtedness affects the final distribution of the estate assets. See *Higdon*, 319 Kan. at 583-84 (applying substantive contract law to primary issue but affirming that procedural law governs garnishment procedure); Restatement (First) of Conflict of Laws § 585 ("All matters of procedure are governed by the law of the forum.").

18

When addressing an heir's indebtedness, Kansas courts sometimes discuss *In re of Estate of Hansen*, No. 66,579, 1992 WL 12944452, at *5 (Kan. App. 1992) (unpublished opinion). Any differences between these two cases do not impact our analysis. See *Holden v. Spier*, 65 Kan. 412, 418-19, 70 P. 348 (1902) ("'It matters not by what name the proceeding is called, whether "retainer," "advancement," "set-off," or "assets in the hands of the legatee"; the practical result is the same, and it rests upon wholesome principles of right and justice.'").

Neither our probate nor other statutes specifically address setoff in this context. But setoff is an equitable right based on a moral duty and is not dependent on any statute.

> "In a note to the *Wilson* case, reported in 1 A.L.R. 993 it is said:
>> "'The rights of an executor or administrator to retain a legacy or distributive share from a debtor to the estate, and apply it to the indebtedness, has long been recognized by the law as existing without any statute. It is not the technical right of set-off in actions of law. It is rather called, in the old cases, the right of retainer. It is an equitable right of its own nature, and not at all dependent upon any statute. It is the plain moral as well as legal duty of the debtor to pay his debts to the estate. He has had the value from the estate. He ought, in morals and law, to restore it. It needs no statute to affirm this duty. It is self-evident. [Citation omitted.]'" *Blackwood v. Blackwood*, 120 Kan. 72, 74-75, 242 P. 451 (1926).

See *In re Estate of Hansen*, 1992 WL 12944452, at *5 (finding retainer appropriate for heir's unauthorized transfers of decedent's funds).

We do, however, have an analogous Kansas statute relating to a successor's indebtedness based on advancements from an intestate decedent, which reflects our state's policy to offset advancements:

> "Property which has been given by an intestate decedent by way of an advancement to one to whom the decedent's property, or a part of it, would pass by

19

intestate succession, shall be counted as a part of the distributive share of such property to such person, and to that extent shall be taken into account in determining the estate to be distributed among those to whom it passes by intestate succession." K.S.A. 59-510.

We recognize that Cheryl's debt was not an advancement and this statute does not apply, when as here, assets were obtained by other means. See, e.g., *In re Estate of Hansen*, 1992 WL 12944452, at *4 (finding money taken because of a breach of a successor's fiduciary duty to a constructive trust did not qualify as advancements). But the fact that advancements freely given by an intestate decedent to the successor must be offset makes it more difficult for us to swallow Cheryl's argument that the money she allegedly took from the decedent involuntarily, which gave rise to the Confession of Judgment, should not be subject to equitable setoff. True, Cheryl denied any liability in the Settlement Agreement, but she nowhere contends that the money stated in the Confession of Judgment was voluntarily given to her by Lorine.

Despite the absence of a controlling statute, decisional law makes clear that setoff is available in Kansas probate proceedings as an equitable remedy. See *Holden*, 65 Kan. at 418 (finding theory under which the debt of a distributee is collected is founded on the principle that the administrator or executor has an equitable lien on the share of the distributee until he or she discharges the obligation owed to the estate); see also *In re Estate of Wernet*, 226 Kan. at 108 (applying *Holden*'s equity-based reasoning in rejecting statute of limitations defense to setoff); *In re Estate of Heiman*, 44 Kan. App. 2d at 772 (finding *Wernet* "recognized setoff could be allowed in that circumstance assuming a district court found equity and fairness required that result"); Cf. *Mynatt v. Collis*, 274 Kan. 850, Syl. ¶ 14, 57 P.3d 513 (2002) (finding a party may seek setoff "through a proceeding in equity"); *Westar Energy, Inc. v. Wittig*, 44 Kan. App. 2d 182, 200, 235 P.3d 515 (2010) (characterizing setoff as an equitable remedy).

In *Holden*, our Supreme Court found that all or part of an heir's debt to the estate on a promissory note would have been barred by the statute of limitations. Still, it held that the statute was only a bar to the remedy, and not to the debt itself, reciting equitable principles:

> "'Measured, however, by a moral standard, and one in accord with good conscience, the debtor is still under an obligation to pay his debt, although a recovery thereon under the law may be barred by the lapse of time.'
>
>      . . . .
>
> "'[The offset procedure] . . . rests upon wholesome principles of right and justice, which can be administered in probate courts without the aid of the court of conscience.'
> [Citation omitted.]" 65 Kan. 418-19.

Similarly, in *Wernet*, our Supreme Court found that an heir's indebtedness to an estate in probate proceedings was not extinguished by the statute of limitations, even though that statute barred the remedy and prevented use of the debt as a cause of action or affirmative defense. The *Wernet* court relied on the equitable theory of the law outlined in *Holden* for finding a statute of limitations defense does not bar setoff:

> "'The theory of the law, and it is an equitable one, is that the indebtedness of an heir of the estate should be regarded as assets of the estate already in his hands, and that his legacy or share is to that extent satisfied. It would be grossly inequitable to allow an heir to obtain his full share of an estate while he was withholding a portion of the same that was already in his hands. It has been said that "it is against conscience that he should receive anything out of the fund without deducting therefrom the amount of that fund which is already in his hands, as a debtor to the estate." This is not a mere question of set-off, but of equitable lien and right of retainer. (*Smith v. Kearney*, 2 Barb.Ch. (533) 548.) Our statute of limitations is one of repose and does not raise a presumption of payment, as in some of the states.'" *In re Estate of Wernet*, 226 Kan. at 108.

Based on this reasoning, *Wernet* held that an heir's indebtedness must be set off against the heir's share of an estate even if a statute of limitations defense would prevent the estate from recovering the debt in direct collection proceedings. *In re Estate of Wernet*, 226 Kan. at 108. The policy underlying setoff is based on the principle that an estate's administrator or executor holds an equitable lien on the heir's share of the estate until the heir is discharged of the obligation owed to the estate. See *Holden*, 65 Kan. at 418; *In re Estate of Button*, 17 Kan. App. 2d 11, 18, 830 P.2d 1216 (1992).

*Wernet* clarified that the amount of debt that is set off is not added to the estate's assets, as it would be if the estate had collected the debt:

> "The debt of Clifford neither adds to nor detracts from the quantum of assets owned by Maggie L. Wernet at the time of her death and cannot be considered as an 'asset' in determining the total valuation of the estate. Clifford's indebtedness merely affects the method of distribution of the actual assets in the estate and does not add to those assets. The indebtedness of Clifford, together with accrued interest thereon, must be calculated and set off against Clifford's distributive share of the estate, if any." 226 Kan. at 108-09.

Similarly, Cheryl's debt affects the method of distribution of the assets in the estate. Her indebtedness in the amount of the Confession of Judgment must be set off against her distributive share of the estate, if any.

The language used in the *Holden* line of cases about avoiding gross inequities and matters against conscience reflects Kansas' strong public policy considerations in favor of offsetting one's debt to an estate. "Courts are not compelled to give effect to a choice-of-law clause if the law the parties have chosen 'contravenes the settled public policy' of this state." *Rogers v. Wells Fargo Bank, N.A.*, 64 Kan. App. 2d 290, 307, 551 P.3d 142 (2024). Cheryl contends that the *Wernet* setoff doctrine does not rise to the level of a public policy exception negating the choice-of-law provisions in Lorine's will and in the parties' Settlement Agreement. But in support, she argues solely that at least 18 other

22

states do not follow our setoff doctrine. We are unpersuaded by this analysis, as our focus is on the nature of the policy within our state and how it is offended by Nebraska law.

We find the Nebraska statutory scheme substantially undercuts Kansas public policy, as found in our prominent and long-standing common-law precedent cited above. Compare *Brenner*, 273 Kan. 525, Syl. ¶ 6, 548 (finding choice-of-law provision invalid on public policy grounds because Kansas' public policy strongly favors the regulation of securities transactions to protect Kansas investors), and *Barbour v. Campbell*, 101 Kan. 616, 168 P. 879 (1917) (enforcing Kansas statute of frauds, which was based on moral grounds, over Idaho law where contract would be valid), with *Enterprise Bank & Trust v. Barney Ashner Homes, Inc.*, No. 106,588, 2013 WL 1876293, at *12 (Kan. App. 2013) (unpublished opinion) (finding differences between Kansas and Missouri statutes defining credit agreements reflect "quotidian legislative decision making rather than pronouncements of profound or immutable public policy"); see also *Brennan v. University of Kansas*, 451 F.2d 1287, 1289-90 (10th Cir. 1971) ("The forum state will give effect to foreign law as long as the foreign law is not repugnant to the moral sense of the community."); *Mertz v. Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 710, 625 N.W.2d 197 (2001) ("Iowa's interest in protecting the expectations of the parties is outweighed by Nebraska's strong public policy considerations."). The fundamental equitable policy set out in *Holden* and its progeny outweighs the expectations of the parties in a conflict-of-laws analysis.

Reversed and remanded for further proceedings consistent with this opinion.